# G. O. MILLER TELEPHONE COMPANY AND OTHERS v. MINIMUM WAGE COMMISSION AND OTHERS.[1]

March 19, 1920.

No. 21,785.

**Minimum wage of women — injunction against orders of commission.**

1. The defendant Minimum Wage Commission made two orders, one, quoted in the opinion, fixing the minimum wages of women and minors, and the other, referred to in the opinion, fixing the wages of learners and apprentices. This action was brought by an employer to restrain the commission from putting the orders into effect. An order for a temporary injunction was made upon the pleadings from which the defendant appeals.

**Construction of minimum wage statute.**

2. The minimum wage statute intends that the minimum rates of wages, which the commission is authorized to fix, shall be based on occupations, and it does not authorize a blanket minimum for women or for minors operative upon all, without reference to wage conditions in the different occupations. It intends an investigation and a determination of wage conditions in the particular occupations to which the minimum rates are made applicable.

**Authority to fix minimum wage conditional.**

3. The commission is authorized to establish legal minimum rates of wages if "after investigation of any occupation the commission is of opinion that the wages paid to one-sixth or more of the women or minors employed therein are less than living wages." The authority to fix a minimum is not given when upon an investigation the commission is of the opinion that one-sixth of the total women workers, or of the total minor workers, employed in the state are receiving less than a living wage. There must be one-sixth or more receiving less than a living wage in the particular occupation to which the order is made applicable.

**Recital in order aided by allegations of answer.**

4. The order of the commission recited that it was "of the opinion that the wages paid to one-sixth or more of the women and minors employed in this state are less than living wages." The opinion recited did

1 Reported in 177 N. W. 341.

not authorize the fixing of a minimum wage. The statute, however, does not require that the order fixing the minimum shall contain a recital or finding that the required one-sixth is receiving less than a living wage. The answer alleged an investigation by the commission, as a result of which it was of the opinion that one-sixth of the women workers and one-sixth of the minor workers in each occupation in the state, including those within the class employed by the plaintiff, were receiving less than a living wage. The order is not invalid because of the recital nor is the commission concluded by it, and under the allegation of the answer the order is valid.

**Same — wages of women and minors may be the same.**

5. The statute intends a separate investigation and determination for women and minors. The minimum wage may be the same for each or it may be different. The order is not invalid because it fixes the same minimum for both.

**Adoption of basic work week not a fixing of hours of labor.**

6. The order fixes the minimum wage for a work week of 48 hours, which it adopts as the basic week for the purpose of fixing a minimum, and provides for an increase for each hour in excess. The commission has no authority to fix hours of labor and the order does not do so. It adopts 48 hours as the basic work week for fixing the minimum wage, and it is not invalid because it allows an addition to the minimum for each hour in excess of the basic 48 hour week.

**Order not applicable to servant's avocation.**

7. The order requires the payment of the prescribed minimum for a period of labor not to exceed 48 hours per week. It does not require the payment of the weekly minimum when the employee does not devote his time to the earning of a living wage, but in connection with another calling or with no calling works a few hours per day or a few hours per week or renders intermittent service. The statute does not apply to such a situation.

**Order not invalidated by distinction between larger and smaller cities.**

8. The order is not invalid, because in fixing the minimum wage a distinction is made between cities of 5,000 inhabitants or more and cities of less than 5,000. The statute contemplates that because of differences in living cost the minimum may not be uniform throughout the state.

**Classification of learners and apprentices.**

9. The order fixing the minimum for learners and apprentices is not

invalid, because it fixes a different minimum for successive periods of service during the period of learning or apprenticeship, nor because of the classification which it makes.

### Minimum Wage Commission — review of injunction against its order.

10. The Minimum Wage Commission is an administrative body to which neither legislative nor judicial powers are delegated. In a review by injunction of its orders the court is limited to a review of such as are made without jurisdiction or under a mistaken interpretation of the law or which are so arbitrary or unreasonable as to deprive one of the guaranteed protection of his property rights.

Action in the district court for Goodhue county to declare void two orders of the Minimum Wage Commission and to restrain defendants from attempting to enforce them, either by criminal prosecution or by the institution of civil actions against plaintiff or others similarly situated. The McLeod Telephone Company and Stott & Son filed complaints in intervention. From an order, Johnson, J., granting plaintiff's motion for a temporary injunction, defendants appealed. Reversed.

*Clifford L. Hilton,* Attorney General, and *James E. Markham,* Assistant Attorney General, for appellants.

*Brown, Abbott & Somsen, O'Brien, Young, Stone & Horn* and *A. J. Rockne,* for respondents.

DIBELL, J.

1. This is an action to restrain the Minimum Wage Commission from putting in force two orders issued July 5, 1919, fixing minimum wages, known as orders number 10 and number 11. The McLeod Telephone Company and Stott & Son intervened and filed complaints. The defendant answered and the plaintiff replied. No affidavits were filed. Upon the pleadings an order for a temporary injunction was made. The defendant appeals.

Order number 10 is as follows:

"Order No. 10, fixing the minimum wage for women and minors of ordinary ability.

"Whereas, the Minimum Wage Commission of the State of Minnesota, under and by virtue of the authority vested in it by the provisions of chapter 547, General Laws of Minnesota for 1913, and after due investigation, being of the opinion that the wages paid to one-sixth or more of the women and minors employed in this state are less than living wages; and

"Whereas, the said Commission has further found and determined and does hereby find and determine that the number of hours per week which a person is customarily employed in performance of work for her or his employer has a direct and substantial bearing on the minimum amount which such person needs and requires as a living wage, in that a person whose time and energy is not substantially consumed in the doing of the work for which she or he is employed may and can do for herself or himself many things which would and do reduce the money cost of living of such person; and

"Whereas, the Commission has found and determined and does hereby find and determine that the cost of living in cities, villages and boroughs having a population of 5,000 or more is greater than in municipalities of less than 5,000 population; and

"Whereas, the said Commission has found and determined and does hereby find and determine that a week of not to exceed forty-eight (48) hours of work constitutes a general and reasonable weekly standard of employment in this state, for women and minors of ordinary ability; and

"Whereas, the said Commission has found and determined and does hereby find and determine that the minimum wages sufficient for living wages for women and minors of ordinary ability, in any occupation, working not to exceed forty-eight (48) hours per week, in any city, village or borough in this state having a population of 5,000 or more inhabitants, is the sum of Eleven ($11) Dollars per week and that where any such person in any such municipality is ordinarily employed for more than Forty-eight (48) hours per week, then and in such case the minimum weekly wages sufficient for living wages for any such person is found and determined to be the sum of Eleven ($11) Dollars plus Twenty-three (23) Cents per hour for each hour such person is cus-

tomarily employed in excess of Forty-eight (48) hours per week; and

"Whereas, the said Commission has found and determined and does hereby find and determine that the minimum wages sufficient for living wages for women and minors of ordinary ability, in any occupation, working not to exceed Forty-eight (48) hours per week, at or in any place other than a city, village or borough having 5,000 or more inhabitants, is the sum of Ten and 25/100 ($10.25) Dollars per week and that where any such person, in any such place, is ordinarily employed for more than Forty-eight (48) hours per week, then and in such case the minimum weekly wages sufficient for living wages for any such person is found and determined to be the sum of Ten and 25/100 ($10.25) Dollars plus Twenty-one and one-half (21½) Cents per hour for each hour such person is customarily employed in excess of Forty-eight (48) hours per week.

"Now, therefore it is hereby ordered that:

"The respective wages above set forth and determined be, and they are hereby declared to be the minimum wages which shall be paid to women and minors of ordinary ability, in any occupation, at the places in said order respectively specified.

"This order shall take effect and be in force on and after August 5, 1919.

"Dated at St. Paul, Minnesota, this 5th day of July, A. D. 1919.

       "MINIMUM WAGE COMMISSION OF THE STATE OF MINNESOTA,

               "By John P. Gardiner, Chairman.

                     "Charles W. Gordon,

                     "Eliza P. Evans, Secretary.

"NOTE:—Under the provisions of Order No. 10 where the person in question is a telephone operator and is customarily on duty between 6 o'clock P. M. and 8 o'clock A. M., and is permitted to sleep while so on duty, 12 hours on duty shall be construed as the equivalent of 8 hours of work, in computing the number of hours of employment per week.

"NOTE:—Each employer affected by the above Order shall post at least one copy of said Order in a conspicuous place in each work-room in which affected workers are employed in his establishment or work place.

"NOTE:—In determining a minimum wage of $11.00 per week, $7.00 is allowed for room and board, and 22½c per meal is allowed for 21 meals per week.

"NOTE:—In determining a minimum wage of $10.25 per week, $6.25 is allowed for room and board, and 21c per meal is allowed for 21 meals per week."

Order No. 11 resembles No. 10, but it has reference to learners and apprentices with certain provisions peculiar thereto which will be noted later.

2. The minimum wage act is Laws 1913, p. 789, c. 547. It was before the court in Williams v. Evans, 139 Minn. 32, 165 N. W. 495, 166 N. W. 504, L.R.A. 1918F, 542, and its constitutional validity sustained. An examination of its provisions leads to the conclusion that the legal minimum wage which it authorizes the commission to fix is not a blanket minimum wage throughout the state for women or for minors, without reference to wage conditions in the different occupations, but is a minimum wage based on the different occupations and fixed after an investigation and determination of wage conditions therein. This appears from the provisions to which we now refer.

Section 2 provides:

"The commission may at its discretion investigate the wages paid to women and minors in any occupation in the state. At the request of not less than one hundred persons engaged in any occupation in which women and minors are employed, the commission shall forthwith make such investigation as herein provided."

Section 5 provides:

"If after investigation of any occupation the commission is of opinion that the wages paid to one-sixth or more of the women or minors employed therein are less than living wages, the commission shall forthwith proceed to establish legal minimum rates of wages for said occupation, as hereinafter described and provided."

Section 6 provides for a determination by the board of the minimum wages for women and minors and for learners and apprentices, making.

the wages thus determined "the minimum wages in said occupation throughout the state, or within any area of the state if differences in the cost of living warrant this restriction."

Section 7 provides that "the commission may at its discretion establish in any occupation an advisory board," certain members representing employers and certain members representing workers "in said occupation" and certain members representing the public.

Section 9 provides that the commission, upon receipt of estimates of minimum wages furnished by an advisory board, shall review them and if it approves them shall make them "the minimum wages in said occupation."

Section 10 provides that the commission "at the request of approximately one-fourth of the employers or employees in an occupation" must reconsider rates established and may order "new rates of minimum wages for said occupation."

Section 11 provides that "for any occupation in which a minimum time rate of wages only has been ordered" there may be issued to a woman physically defective a special license authorizing her employment at a less wage "in said occupation."

Section 12 prohibits "every employer in any occupation" from employing any worker at less than the minimum wage.

Section 20(8) defines the term "occupation" as "any business, industry, trade, or branch of a trade in which women or minors are employed."

An examination of the minimum wage statutes of other states in dicates that occupation is a common basis of classification.

3. Order No. 10 recites that after investigation the commission is "of the opinion that the wages paid to one-sixth or more of the women and minors employed in this state are less than living wages." The recited fact gives the commission no authority to fix a minimum wage. The test is prescribed by section 5 of the statute which provides that the commission may establish legal minimum rates of wages "if after investigation of any occupation [it] is of opinion that the wages paid to

one-sixth or more of the women or minors employed therein are less than living wages." It reaches a single occupation in which one-sixth of the workers are paid less than a living wage. It does not reach an occupation, unless such condition exists, though one-sixth of the entire body of workers in all occupations receive less than a living wage. It would be unfortunate for those whom the statute intends helping if the commission were without authority except when one-sixth of the total women employees of the state, or one-sixth of the total minor employees, were receiving less than a living wage, and if conditions were so could do nothing for the employees in a particular occupation where a living wage was not paid. The legislature had in mind that there were occupations in which a considerable proportion of the employees was receiving less than a living wage. If there were so great a proportion as one-sixth it intended that the board should fix a minimum wage. It had in mind that there were other occupations so well paid that none or but a negligible few received less than a living wage, and it gave the commission no jurisdiction unless one-sixth in an occupation were receiving less than a living wage. It did not intend that the commission should be without jurisdiction over an occupation in which one-sixth were receiving less than a living wage, because of the fact that five-sixths of the total number of employees in all occupations in the state were receiving more than a living wage. It intended to reach each occupation in which wage conditions were harsh. The orders of October 23, 1914, involved in Williams v. Evans, 139 Minn. 32, 165 N. W. 495, 166 N. W. 504, L.R.A. 1918F, 542, seem to have been upon this interpretation of the statute.

4. The statute does not require a formal finding or a recital of the opinion of the commission after investigation. To make the order it is necessary that the commission have an investigation and reach the opinion which the statute requires, but the statute does not require a formal recital or finding. The one made might have been omitted. An inaccuracy or mistake or indefiniteness in the wording of the order does not render the investigation useless and the order without effect, nor, if the fact exists, is the commission concluded by an omission to recite

it or by a faulty recital. There is no analogy between the order of the commission and the findings of fact and conclusions of law in an action tried by the court, where under our practice the findings must be legally sufficient to support the conclusions. The answer alleges that the commission, after a complete investigation, and facts evidencing a thorough and extensive investigation are alleged, was "of the opinion that more than one-sixth of the women and more than one-sixth of the minors employed in the state in each and every occupation were receiving less than a living wage at the time the orders complained of were issued, and they allege that as a matter of fact more than one-sixth of the women and more than one-sixth of the minors employed by the independent telephone companies and manufacturing plants, in which class plaintiff's employees and those of the interveners herein are included, were receiving less than living wages at the time these orders were issued." This allegation is not to be disregarded, and the recital quoted, insufficient if one stating the existence of conditions authorizing the fixing of a minimum wage were required, does not control the facts alleged or make the order invalid.

5. Objection is made to the order because it gives women and children the same minimum wage. The statute intends a separate investigation and determination for women and minors. There may be a different minimum for each. The minimum may be the same for each. The facts alleged, as we must take them, do not show that the order is invalid because the commission made one minimum applicable to both classes. Again, the plaintiff cannot complain if the minimum for neither class which it employs is too high.

6. Complaint is made of the order because it fixes a minimum of $11 for 48 hours per week which is to be increased by 23 cents an hour for each hour of work in excess of 48 hours, and the claim is that it amounts to a fixing of the hours of labor and of pay for overtime.

The commission has no authority to fix legal hours of labor. The statute fixes 10 hours as a standard day's work for hire unless a shorter time is agreed upon. G. S. 1913, § 3831. It is the contract labor day. It fixes a shorter daily and weekly limit for women in certain employments. G. S. 1913, § 3851. The order does not fix the hours of labor.

It takes 48 hours a week as the basic period of labor upon which to compute a minimum wage. An 8 hour day is a quite customary work day in industries. It is the period fixed by statute for state labor. Laws 1919, p. 37, c. 40; Laws 1917, p. 631, c. 422.

The commission finds that the number of hours per week which one is employed has a substantial relation to the living wage. The point made is that one employed for 8 hours per day may make use of some time additional thereto in lessening living cost which otherwise would be used in labor and could not be so used. We cannot say that this contention is fanciful. If the minimum wage had been fixed on the basis of 48 hours per week, or upon the maximum which a woman is permitted to work, with a reduction in case of fewer hours, the objection now made might seem less forceful.

7. The plaintiff complains of the fixing of a minimum wage for a period "not to exceed 48 hours per week." In the same connection it complains of the note appended to the order relative to a telephone operator working during the night and providing that 12 hours on duty shall be the equivalent of eight hours of work.

Its claim is that the order requires it to pay for any service, for instance, an hour or two per day, or for intermittent service, not less than the minimum prescribed for eight hours. The order should not be so construed. The minimum wage statute applies to workers working at an occupation for a livelihood. Its purpose is to provide against employing at less than a living wage, for a period which substantially covers an ordinary work week or other work period. It does not apply to those engaged in some calling or in no calling, who engage their services for a small work day period or who do intermittent service.

In their argument counsel for the plaintiff suppose a situation which they state as follows: "All through the state, in the smaller centers of population, there are telephone exchanges in stores, postoffices and dwellings. They require but little attention. Many of them certainly absorb less than 2 hours a day of the time of the operator, who is a salesman, the postmaster, the house-wife, or some other member of the family, if the exchange is in a home. Where night service is given by such exchanges the night calls are few and far between. To a very con-

siderable extent the operators are women or minors. They are employed probably not to exceed 2 hours a day, or 14 hours a week." Remarking upon such a situation they say: "To enforce the orders would deprive the telephone companies and their patrons of a large amount of low cost, though well paid, service. It might deprive many a family of a small, though welcome, addition to its income." The order, alone or in connection with note 2 bearing on telephone companies, is not construed as fixing a minimum wage for services of the kind mentioned. It is, as we have said before, the purpose of the minimum wage act to reach occupations which furnish the substantial livelihood to workers therein and consume their ordinary work period and not to include workers who do some slight or intermittent daily or weekly service.

Just what is meant by the note relative to work between 6 p. m. and 8 a. m. is not made clear by the pleadings. On its face it is not unfavorable to the employer. Likely its effect is easily determinable when a concrete case arises.

8. The commission in fixing minimum wages makes a distinction between cities of 5,000 or more inhabitants and cities of less than 5,000. For cities of 5,000 or more the minimum is $11 per week of 48 hours with 23 cents per hour for additional time, and for cities of less than 5,000 the minimum is $10.25 with an added 21½ cents for additional time. We cannot say that this is an arbitrary classification. Section 6 of the statute contemplates that because of differences in the cost of living the minimum may not be uniform throughout the state. And again, the plaintiff has no cause of complaint, unless the minimum which it is required to pay is too high.

9. Order No. 11 fixes the minimum wages for learners and apprentices. The statute does not define learner and apprentice except insofar as section 20 provides that a learner or apprentice may mean either a woman or a minor. The definition is left to the law. The order provides for a minimum for apprentices under 18 years of age, and fixes a different minimum for the first three months and for the second three months and for the third three months. From what appears in the pleadings we cannot hold that this is an invalid classification or that it is an invalid administrative regulation. The order has the general

features of No. 10 and the objections to it common to No. 10 have been discussed.

10. The Minimum Wage Commission is an administrative body. It does not determine hours of labor or prescribe conditions of employment or work out the rights of the employer and employee, except insofar as its fixing of a minimum wage under conditions prescribed by the statute has such effect. Legislative power is not delegated to it nor judicial power conferred upon it. It has the administrative authority which is conferred by the statute. In performing the duties with which it is charged it must be permitted to proceed in a practical way so as to accomplish the lawful results intended. It must be permitted to exercise judgment and discretion in working out the details of administration and establish some sort of administrative regulations. This does not mean that it has either delegated legislative or judicial power. The legislature determines the policy of the statute. The review by a court of the orders of the commission is limited to such as are made without jurisdiction, or under a mistaken interpretation of the law, or are so arbitrary and unreasonable that they deprive a party of guaranteed property rights. The scope of review is such as has been announced from time to time, in cases involving various situations, and often recently, as in administering statutes enacted under the police power duties are increasingly cast upon boards and commissions. The cases following illustrate applications of the principle when relief has been sought by different appropriate remedies. State v. State Medical Examining Board, 32 Minn. 324, 20 N. W. 238, 50 Am. Rep. 575; Steenerson v. Great Northern Ry. Co. 69 Minn. 353, 72 N. W. 713; State v. Great Northern Ry. Co. 100 Minn. 445, 111 N. W. 289, 10 L.R.A.(N.S.) 250; Diamond v. City of Mankato, 89 Minn. 48, 93 N. W. 911, 61 L.R.A. 448; Hunstiger v. Kilian, 130 Minn. 474, 153 N. W. 869, 1095, and cases cited; Farrell v. County of Sibley, 135 Minn. 439, 161 N. W. 152; Brazil v. County of Sibley, 139 Minn. 458, 166 N. W. 1077, and cases cited; State v. State Securities Commission, supra, page 221, 176 N. W. 759.

The courts are open and when an administrative body transcends or abuses its authority in the ways noted its acts are subject to review.

The remedy afforded may not be perfect, but it is such as the law gives. A temporary writ should not have been granted.

Order reversed.