40 N.J. Super. 329 (1956)
123 A.2d 56
CHRISTOPHER LANE, ET AL., PETITIONERS,
v.
CARL HOLDERMAN, COMMISSIONER OF LABOR AND INDUSTRY OF THE STATE OF NEW JERSEY, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 14, 1956.
Decided May 28, 1956.
*332 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. James E. Fagan argued the cause for petitioners (Messrs. Gilhooly, Yauch & Fagan, attorneys).
Mr. Thomas L. Franklin argued the cause for respondent (Mr. Grover C. Richman, Jr., Attorney-General).
Mr. Roger Hinds filed a brief as amicus curiae representing National Consumers' League, Consumers' League of New Jersey, and speaking similarly for New Jersey Council of Churches, and its department, United Church Women of New Jersey; Protestant Episcopal Diocese of New Jersey (Department of Christian Social Relations); Protestant Episcopal Diocese of Newark (Department of Christian Social Relations); and New Jersey State Federation of Colored Women's Club, Inc.
Mr. Sol D. Kapelsohn filed a brief as counsel for Amalgamated Clothing Workers of America, AFL-CIO, amicus curiae (Mr. William J. Isaacson, Mr. Sol D. Kapelsohn and Mr. Herbert Semmel on the brief).
*333 The opinion of the court was delivered by CLAPP, S.J.A.D.
This is a proceeding instituted in this court under R.R. 4:88-10 by 64 employers engaged in the laundry, cleaning or dyeing businesses. They seek a declaratory judgment setting aside Minimum Fair Wage Standards Mandatory Order No. 10 of the Commissioner of Labor and Industry, insofar as it relates to overtime wage rates. The order affects only women and minors employed in those businesses.
The petitioners by their stipulation have confined the case to two questions, which may be stated thus: does N.J.S.A. 34:11-47 confer upon the Commissioner of Labor and Industry power to establish overtime rates and also to fix the number of hours per week after which they are to become effective; and if so, has the law set up standards for the guidance of the Commissioner, which will satisfy constitutional requirements.
The questions are novel. In fact there are no reported cases in this State dealing with the Minimum Wage Act, though it was originally adopted in 1933 (L. 1933, c. 152). As to the history of such legislation, see De Vyver, "Regulation of Wages and Hours Prior to 1938," 6 Law and Contemp. Problems 323 (1939); Leiter, "The Principle of Overtime," 2 Labor L.J. 24 (1951). As to a law fixing the maximum hours of labor for females, see N.J.S.A. 34:2-24; for minors under 18, see N.J.S.A. 34:2-21.3. For a look into the past, see L. 1851, pages 321, 322. As to the validity of the minimum wage laws apart from the question of overtime, see Annotation, 39 A.L.R.2d 740.
In the present case the Commissioner appointed a wage board pursuant to N.J.S.A. 34:11-39 and 34:11-40, which ultimately made a report leading to the order mentioned. The report recommended the following minimum fair wage standards:
"1. That the basic Minimum Fair Wage for Women and Minors employed as non-clerical workers in Laundry and Cleaning and Dyeing Occupations be 80¢ per hour for the first four weeks of employment and 85¢ per hour thereafter.
*334 2. That the basic Minimum Hourly Rate for clerical workers employed in Laundry and Cleaning and Dyeing Occupations be 75¢ per hour for the first four weeks of employment, and 80¢ per hour thereafter."
So far as appears in the record before us, the wage board did not pass upon overtime rates; however the statute does not require it to do so. Order No. 10 adopts the report and includes, by way of supplement, the following regulations, which are attacked by this proceeding:
"OVERTIME RATES. Overtime rates mean one and one-half times the employee's regular hourly wage rate which shall be paid to each woman and minor subject to the provisions of this Order for hours worked in excess of forty-eight (48) hours in any work week during the period of time beginning with May 6, 1956 through August 6, 1956; hours worked in excess of forty-four (44) hours in any work week during the period of time beginning with August 7, 1956 through November 7, 1956, and hours worked in excess of forty (40) hours in any work week beginning on or after November 8, 1956. The overtime rates established by this Order shall not apply in the case of any person employed on a weekly, monthly or yearly salary basis, whose salary reduced to a weekly basis is in excess of $60.00 and whose employment is in a bona-fide supervisory or executive capacity.
REGULARLY HOURLY WAGE RATE. The term `regular hourly wage rate,' as used in this Order, shall mean the amount that the employee is regularly paid for each hour of work. When an employee is paid on a piece work basis or any other basis than an hourly rate the `regular hourly wage rate' shall be determined by dividing the total of the hours worked during the week into the employee's total earnings exclusive of part time bonuses for the week and exclusive of wages earned at overtime rates as such rates are defined in this Order."
The question as to whether the Commissioner has sufficient power to deal with overtime turns largely on N.J.S.A. 34:11-47:
"Within ten days after the hearing the commissioner shall confer with the director and approve or disapprove the report of the wage board. If the report is disapproved the commissioner may resubmit the matter to the same wage board or to a new wage board. If the report is approved the commissioner shall make a mandatory order which shall define minimum fair wage rates in the occupation or occupations as recommended in the report of the wage board and which shall include such proposed administrative regulations as the commissioner may deem appropriate to supplement the report of the wage board and to safeguard the minimum fair wage standards *335 established. Such administrative regulations may include among other things, regulations defining and governing learners and apprentices, their rates, number, proportion or length of service, piece rates or their relations to time rates, overtime or part time rates, bonuses or special pay for special or extra work, deductions for board, lodging, apparel or other items or services supplied by the employer, and other special conditions or circumstances; and in view of the diversities and complexities of different occupations and the dangers of evasion and nullification, the commissioner may provide in such regulations without departing from the basic minimum rates recommended by the wage board such modifications or reductions of or addition to such rates in or for such special cases or classes of cases as those herein enumerated as the commissioner may find appropriate to safeguard the basic minimum rates established. Said mandatory order shall take effect upon expiration of one hundred eighty days from the date of the issuance of the order."
An administrative regulation, purporting to effectuate a statute, will not be set aside on the ground that it transgresses the statute, unless the transgression is plain; the presumption is in favor of validity. Grenewicz v. Ligham, 34 N.J. Super. 1, 9 (App. Div. 1955).
But we need not rely upon presumptions. It seems to us beyond question here that this statute gives the Commissioner the power to
"supplement" the report with regulations "defining and governing * * * overtime * * * rates, bonuses or special pay for special or extra work,"
and the further power to
"provide in such regulations without departing from the basic minimum rates recommended by the wage board such * * * addition to such rates in or for such special cases or classes of cases as those herein enumerated as the commissioner may find appropriate to safeguard the basic minimum rates established." (Italics added.)
This last provision seems to state expressly that in any of the enumerated classes of cases, such as overtime, the Commissioner may provide for an addition to the basic rate. Cf. G.O. Miller Telephone Co. v. Minimum Wage Commission, 145 Minn. 262, 177 N.W. 341, 344 (Sup. Ct. 1920), where there was no express power to fix overtime rates or hours of labor, and yet the court held that the mere power *336 to establish a minimum living wage carried with it the power to establish overtime rates.
The petitioners argue that the phrase, "defining and governing" overtime rates, does not give the Commissioner power to establish overtime rates. We think otherwise. The word "define" in this context means to fix or establish. Boyd Paving & Contracting Co. v. Ward, 85 F. 27, 35 (8 Cir. 1898); Dow v. Gould & Curry Silver Min. Co., 31 Cal. 629, 639 (Sup. Ct. 1867); State ex rel. Devening v. Bartholomew, 176 Ind. 182, 95 N.E. 417, 419 (Sup. Ct. 1911); Sanders v. Belue, 78 S.C. 171, 58 S.E. 762, 764 (Sup. Ct. 1907); Black's Law Dictionary (4th ed.); Standard Dictionary; 26 C.J.S., Define, p. 678; cf. Webster's New International Dictionary (2nd ed.). The word "govern" means to direct and control, rule or regulate. Tucker v. State, 218 Ind. 614, 35 N.E.2d 270, 291 (Sup. Ct. 1941); cf. Richmond F. & P.R. Co. v. City of Richmond, 96 U.S. 521, 528, 24 L.Ed. 734, 737 (1878).
Petitioners argue that the power to define and govern overtime rates, does not include the power to fix the number of hours per week after which such rates are to become effective. But we think one thing goes with the other. The authority to fix overtime rates would not mean much if the Commissioner could not fix the point in the work week at which they were to become applicable. Petitioners, it is to be noted, do not challenge the order on the ground that it is unreasonable or unsupported by adequate evidence; for example, they make no claim that the order is unreasonable insofar as it requires overtime rates as to "hours worked in excess of forty (40) hours in any work week beginning on or after November 8, 1956."
If we had any doubt as to whether the statute confers such powers upon the Commissioner, it would be resolved by the interpretation that has been put upon the statute by the Commissioner for 17 years. Minimum wage orders No. 2, 3, 4, 5, 6, 8 and 9, issued by the Commissioner, provide for overtime rates as follows (4 C.C.H., Labor Law Rep., New Jersey, § 44,055):

*337
Mandatory
Order No. Industry Overtime rate
 1 July 11, 1938 Laundry None
 2 July 3, 1939 Light manufacturing 1 1/2 times regular hourly
 rate "and not at any
 minimum rate established
 by this Wage Order" for
 hours in excess of 44
 per week for the period
 Jan. 3-Oct. 24, 1939;
 hours in excess of 42 per
 week for period Oct. 25,
 1939 - Oct. 24, 1940;
 hours in excess of 40
 per week on or after
 Oct. 24, 1940
 Oct. 29, 1940 Light manufacturing Same
 (revised)
 3 July 3, 1939 Wearing Apparel & Same as Order No. 2
 Allied Occupations
 Dec. 1, 1942 " " Same
 (revised)
 4 May 22, 1939 Cleaning & Dyeing 1 1/2 basic minimum over
 54 hours
 May 6, 1940 " " 1 1/2 basic minimum over
 54 hours
 5 Jan. 10, 1943 Beauty Culture 1 1/2 times minimum for
 hours in excess of 48
 per week
 6 Aug. 13, 1946 Restaurant 1 1/2 times minimum
 7 Oct. 24, 1946 Laundry, cleaning None
 & dyeing
 8 June 6, 1946 Retail trade 1 1/2 times minimum for
 hours in excess of 40
 per week in zone "A"
 counties; and in excess
 of 44 per week
 in zone "B" counties
 9 Feb. 19, 1956 Restaurant 1 1/2 times regular hourly
 rate for hours in excess
 of 48 per week for
 period Feb. 19 - May
 19, 1956; hours in excess
 of 44 per week for
 period May 20 - Aug.
 17, 1956; and hours
 in excess of 40 per
 week on or after Aug.
 18, 1956

*338 Where the import of a statute is doubtful, the practical construction put upon it over a long period of time by an agency charged with its enforcement is of some weight in determining its proper significance, even though the construction is not strictly contemporaneous. Great Northern R. Co. v. United States, 315 U.S. 262, 275, 62 S.Ct. 529, 86 L.Ed. 836, 843 (1942); Walsh v. Department of Civil Service, 32 N.J. Super. 39, 48 (App. Div. 1954); cf. State Department of Civil Service v. Clark, 15 N.J. 334, 340 (1954).
Here we have not only the administrative gloss, but (so the parties have stipulated) "numerous convictions" in the lower courts for violations of the overtime provisions in Orders No. 2 and 3. In one case in the First Criminal Judicial District Court of the County of Bergen, decided October 27, 1943, where the defendant was found guilty of violating Mandatory Order No. 2 for not paying at 1 1/2 times the regular hourly rate, the court overruled his contention that the statute required him to pay merely 1 1/2 times the minimum rate. A long standing judicial construction of a statute, accompanied by a failure to amend it, is looked upon as some evidence that the construction comports with the legislative intent. Barringer v. Miele, 6 N.J. 139, 144 (1951).
There was such an amendment here, following the original Orders No. 2 and 3 above mentioned; through that amendment, N.J.S.A. 34:11-47 was reenacted except that it required orders thereafter issued to be mandatory from the outset. Such reenactment, however, may be said to give added weight to the construction theretofore adopted by the agency and the courts. Harper v. New Jersey Mfrs. Cas. Ins. Co., 1 N.J. 93, 99 (1948).
Moreover, there are similar administrative constructions which have been placed upon similar statutes in other states. We find six states with minimum wage statutes quite like New Jersey's statute, in that each authorizes an official to supplement the recommendation of a minimum wage board, with regulations "which shall define" or "defining" overtime *339 rates. Arizona Code, § 56-406 (1939); Conn. Gen. Stat. § 3789, as amended § 2028d (Supp. 1955); Illinois Ann. Stat., c. 48, § 198.7 (1950); New Hampshire Rev. Stat. § 279.10 (1955); Ohio Rev. Code § 4111.07 (1953); Rhode Island Gen. Laws, c. 289, § 9 (1938). At least five of these states have issued orders pursuant thereto which fix overtime rates. 4 C.C.H., Labor Law Rep. 41,229 (Arizona); 41,734 (Connecticut); 42,432 (Illinois); 45,530 (Ohio); 46,329 (Rhode Island). And we find that one of these five states, namely Connecticut, has issued overtime orders based on regular rates of pay. 4 C.C.H., Labor Law Rep. 41,734.
This brings us to a troublesome question suggested by petitioners, which we think is hardly raised by the record and is very little considered by the several answering briefs. New Jersey's Order No. 10, which is under attack here, fixes overtime rates at one and one-half times the employee's regular wage rate, even though it exceeds the established minimum rate. Has the Commissioner power to fix overtime rates as to wages above the minimum? If so, is he empowered merely to safeguard the overtime order affecting the minimum rate? For example, where an employer pays 150% of the minimum rate, can he be required under this statute to pay overtime at 225% of the minimum rate after 40 hours? Other questions suggest themselves here. On the other hand, note the administrative construction evidenced by New Jersey Orders No. 2, 3 and 9; note also the Connecticut orders cited. The problem, of course, does not arise if the only petitioner or petitioners, who will actually be affected by this order, pay merely the minimum rate; their regular wages would not exceed the established minimum wage scale. But we are not informed by the record what wages are paid by petitioners here. Moreover, it appears that at the present time 63 of the 64 petitioners are voluntarily paying overtime rates at one and one-half times the regular rate; and perhaps (as we suggest) the 64th pays only minimum rates. In fact, there is nothing before us to indicate that any of the petitioners have any reasonable *340 cause to apprehend injury from the order on the ground stated; and of course we do not answer hypothetical questions.
We therefore conclude that N.J.S.A. 34:11-47 gives the Commissioner power to establish overtime rates with respect to minimum wage rates; but whether or to what extent it gives him the power to fix overtime rates as to wages paid above the minimum rate, we do not decide.
The second principal question is whether in conferring this power to establish an overtime rate with respect to the minimum wage scale, the Legislature has laid down adequate standards. Petitioners maintain that the Attorney-General's construction of the statute would invest the Commissioner with an unlimited authority to fix overtime at any rate or after any hour that might suit his whim. This clearly is not so. Mary Lincoln Candies v. Department of Labor, 289 N.Y. 262, 45 N.E.2d 434, 437, 143 A.L.R. 1078 (Ct. App. 1942).
We think the statute adequately circumscribes the Commissioner's power. In fact, N.J.S.A. 34:11-47 very obviously contains an express standard designed to control the Commissioner when he fixes overtime rates; he is obliged "to safeguard the minimum fair wage standards established." The implication of N.J.S.A. 34:11-47 is that even though the wage board may have been dealing with minimum wage rates exclusive of an overtime rate, nevertheless the Commissioner may set up an overtime rate, by way of supplement to the wage board's recommendations, in order to safeguard the purposes of the minimum rates. The statute might have been more precise, but there is nothing unreasonable here.
If an analysis is made as to the purposes of fixing a minimum rate, as expressed in the act, it will become quite apparent that an overtime rate may serve to safeguard them. The object of setting up a wage board and of calling upon it "to report upon * * * minimum fair wage rates" is to prevent women or minors from receiving "oppressive and unreasonable wages." See N.J.S.A. 34:11-39. See also N.J.S.A. 34:11-36, declaring employment at such wages to be against public policy; cf. the preamble to this *341 act, L. 1933, c. 152, not carried over into the Revised Statutes of 1937. The act (N.J.S.A. 34:11-34) defines an oppressive and unreasonable wage as one
"* * * which is both less than the fair and reasonable value of the services rendered and less than sufficient to meet the minimum cost of living necessary for health."
Minimum wage rates therefore serve two purposes, namely, to provide (1) the minimum "fair and reasonable value of the services rendered" (further see N.J.S.A. 34:11-43; "fair wage," 34:11-34; De Vyver, supra, 329); and (2) the amount "sufficient to meet the minimum cost of living necessary for health."
We shall take these two factors separately. An overtime rate may properly constitute a supplementary "safeguard" of the minimum "fair and reasonable value of services rendered" for which minimum rates are fixed; because an overtime rate today commonly enters into the fixing of the minimum fair and reasonable value of services. This is a fact familiar to us all. See Leiter, supra, 29; 29 U.S.C.A. 207 (a) covering, it is said, 25,000,000 workers. Indeed, as noticed above, overtime is paid at one and one-half times the regular hourly wage rate by all but one of the 64 petitioners here  36 of them as to hours worked in excess of 42 1/2 hours a week, and 27 of them as to hours in excess of 40 hours a week.
An overtime rate also may properly constitute a supplementary safeguard of minimum rates in connection with the second factor above stated; that is, it may assist in securing a wage "sufficient to meet the minimum cost of living necessary for health." A living wage is the heart of a minimum wage act. Quite obviously the objects of such an act are not achieved merely by the promulgation of minimum rates; it takes such a rate multiplied by an appropriate number of hours to produce the living wage. Mary Lincoln Candies v. Department of Labor, 289 N.J. 262, 45 N.E.2d 434, 436, 143 A.L.R. 1078 (Ct. App. 1942). *342 An overtime rate safeguards the living wage as to all employees, including an employee receiving only a minimum rate; for it tends to eliminate sickness and accident which are more apt to accompany long working hours, and so it tends to provide all employees with steady employment year in and year out, and hence to provide the employee receiving a minimum rate with a minimum living wage. Hours of Work in Relation to Health and Efficiency, N.Y. Dept. of Labor, Div. of Women in Industry and Minimum Wage (1941). An overtime rate also has a tendency to even out the number of hours worked by all employees; thus, by tending to reduce excessive hours on the part of some women in the laundry industry, it may be said to make it less likely that other women will be called upon for only a few hours in the week  thereby increasing the chance that this latter group of women will be able to earn a minimum living wage. For still another factor bearing on a minimum living wage, see G.O. Miller Telephone Co. v. Minimum Wage Commission, 145 Minn. 262, 177 N.W. 341, 342, 344 (Sup. Ct. 1920).
The statute therefore quite plainly lays down a standard for the guidance of the Commissioner when he establishes an overtime rate. He must safeguard the two purposes of minimum rates, above stated; that is, he must secure for the employee, first, the minimum fair and reasonable value of the services rendered and, second, a minimum living wage.
Petitioners' final point is that the grant of power to the Commissioner to fix overtime rates is unconstitutional in that it enables him, through his order, to constitute a certain act of an employer a misdemeanor. See N.J.S.A. 34:11-55, second paragraph, which makes it a misdemeanor for an employer not to pay the rates fixed by a minimum fair wage order. Petitioners rely on the cases cited in Van Riper, State by, v. Traffic Tel. Workers' Fed. of New Jersey, 2 N.J. 335, 354 (1949); cf. Davis, Administrative Law § 15 (1951). But it is entirely settled that the Legislature may render the violation of an agency's rules, a criminal offense. United States v. Grimaud, 220 U.S. 506, 31 S.Ct. *343 480, 55 L.Ed. 563 (1911); Davis, p. 69; Annotation, 39 A.L.R.2d 740, 756. As indicated in Van Riper, the only question is whether the statute granting authority to the Commissioner is fitted with sufficient standards; for less ample standards are adequate where the provisions are not penal in character. But here the standards suffice.
Submit judgment.