MENTAL HEALTH ASSOCIATION OF UNION COUNTY, INC., PLAINTIFF, v. CITY OF ELIZABETH, NEW JERSEY, JOHN N. SURMAY, DIRECTOR OF HEALTH, WELFARE AND HOUS-ING, AND WILLIAM LAMORTE, CODE ENFORCEMENT OFFI-CER, DEFENDANTS.

Superior Court of New Jersey
Law Division Union County

June 30, 1981.

*Alan J. Gutterman* for plaintiff (*Gutterman & Wolkstein*, attorneys).

*David Lazarus* for *amicus curiae* Community Mental Health Law Project (*David Lazarus* and *Gary Gordon* on the brief).

*Marvin Lehman* for defendants (*Frank P. Trocino*, City Attorney, attorney).

FELLER, J. S. C. (retired, temporarily assigned on recall).

This is an action in lieu of prerogative writs brought by plaintiff Mental Health Association of Union County, Inc., against defendants City of Elizabeth and various officials thereof. The matter is presently before this court on an order to show cause in which plaintiff seeks to enjoin defendants from interfering in any way with renovation and construction work on plaintiff's premises. Plaintiff also seeks an order directing defendants to withdraw their rescission of the building permit previously issued to plaintiff and their notice of violations issued to plaintiff. On the adjourned return date of the order to show cause defendant moved to dismiss the complaint and oral arguments were heard.

In October 1979 plaintiff acquired the subject premises known as 545 Westminster Avenue in Elizabeth. The property consists of a 2½-story frame dwelling with an attached one-car garage. Plaintiff sought to use the property as a community residence for no more than six developmentally disabled or mentally ill persons.

On December 2, 1980 plaintiff's executive director, Edmund P. Murphy, received a building permit from defendant city covering plaintiff's planned renovation of the premises to comply with applicable building codes. Later that day, however, defendant LaMorte telephoned Murphy and told him that a "hold" had been placed on the building permit.

An exchange of letters between plaintiff and defendant Surmay followed, in which plaintiff sought to know the reason for

the "hold" and defendant requested further information concerning plaintiff's proposed use of the property. Finally, on March 10, 1981 plaintiff received a letter from defendant La-Morte stating that the building permit had been rescinded. A letter from defendant Surmay, dated March 12, 1981, explained the reasons for the rescission.

Surmay wrote that plaintiff's building permit had been rescinded because plaintiff's proposed use of the premises did not conform to the use provisions of the Elizabeth zoning ordinance. According to Surmay, the ordinance did not expressly provide for the establishment of community facilities for the developmentally disabled in any zone district; therefore, plaintiff's application must be denied.

The New Jersey statute governing zoning for community residences for the developmentally disabled provides, in part:

> Community residences for the developmentally disabled ... shall be a permitted use in all residential districts of a municipality, and the requirements therefor shall be the same as for single family dwelling units located within such districts; provided, however, that in the case of a community residence for the developmentally disabled ... housing more than six persons, excluding resident staff, a zoning ordinance may require for the use or conversion to use of a dwelling unit to such a community residence ... a conditional use permit in accordance with section 54 of the act to which this act is a supplement (C. 40:55D-67). [N.J.S.A. 40:55D-66.1].

The statute goes on to define a community residence for the developmentally disabled as follows:

> Any community residential facility licensed pursuant to N.J.S.A. 30:11B-1 et seq. providing food, shelter and personal guidance, under such supervision as required, to not more than 15 developmentally disabled or mentally ill persons, who require assistance, temporarily or permanently, in order to live in the community, and shall include, but not be limited to, group homes, halfway houses, intermediate care facilities, supervised apartment living arrangements, and hostels.

In addition, a developmentally disabled person means:

> A person who is developmentally disabled as defined in section 2 of N.J.S.A. 30:11B-2, and "mentally ill person" means a person who is afflicted with a mental illness as defined in N.J.S.A. 30:4-23, [N.J.S.A. 40:55D-66.2]

This court is persuaded that the State Legislature has preempted the field of zoning for community residences for the

developmentally disabled. It is well established that a municipality may not act in an area which the Legislature has preempted. *Fair Lawn Ed. Ass'n. v. Fair Lawn Bd. of Ed.*, 79 *N.J.* 574 (1979). In determining whether the Legislature has preempted an area, the primary consideration is whether the municipal action adversely affects the Legislative scheme. *Fair Lawn, supra* at 586. As the court stated in the case of *Garden State Farms, Inc. v. Bay*, 77 *N.J.* 439 (1978):

> A legislative intent to preempt a field will be found either where the state scheme is so pervasive or comprehensive that it effectively precludes the coexistence of municipal regulation or where the local regulation conflicts with the state statutes or stands as an obstacle to a state policy expressed in enactments of the Legislature.

In the present case it is clear that defendants' interpretation of Elizabeth zoning ordinances as prohibiting plaintiff's proposed use is in direct conflict with *N.J.S.A.* 40:55D–66.1 *et seq.* and the legislative policy embodied therein. As such that interpretation must fall before the clear expression of the Legislature's will.

Defendants further argue that *N.J.S.A.* 40:55D–66.1 *et seq.* is unconstitutionally vague or indefinite.

It goes without saying that a legislative enactment is presumed valid and that the burden of proving invalidity of a statute is a heavy one. *Velmohos v. Maren Eng. Corp.*, 83 *N.J.* 282 (1980). Legislative bodies are presumed to act on the basis of adequate factual support, and absent a sufficient showing to the contrary, it will be assumed that their enactments rest upon some rational basis within their knowledge and experience; that presumption can be overcome only by proofs which preclude the possibility that there could have been any set of facts known to the legislative body or which could reasonably be assumed to have been known, which would rationally support a conclusion that the enactment is in the public interest. *Hutton Park Gardens v. West Orange*, 68 *N.J.* 543 (1975).

Defendants assert that the statute in question is arbitrary in that it sets two different standards to determine whether resi-

dences for the developmentally disabled are subject to local ordinances. Defendants read the statute as providing no local regulation for residences of six persons or less, while allowing reasonable regulations for residences of more than six persons. Defendants contend that the number of persons in the residence is no indication of the potential effect of such a use on the health and safety of the community.

In the first place defendants are incorrect in their belief that the statute provides for no local regulation of residences of six persons or less. Such residences are in fact subject to the health, safety and other regulations of residential districts in general. Nor can the legislative limit of six persons be considered arbitrary. The statute represents an apparent attempt by the Legislature to take into consideration the potential effect of overcrowding in residences of this sort. In any event, in view of the strong presumption favoring the statute's validity, it cannot be said that defendants have met their heavy burden of demonstrating that the Legislature acted arbitrarily, capriciously or unreasonably.

Defendants' argument that *N.J.S.A.* 40:55D–66.1 *et seq.* is void for vagueness is also without merit. Defendants contend that the terms "developmentally disabled" and "mentally ill" are imprecise and vague. However, *N.J.S.A.* 40:55D–66.2 specifically states that the definitions of these terms are those appearing in *N.J.S.A.* 30:11B–2 and *N.J.S.A.* 30:4–23 as follows:

> Developmentally disabled means experiencing a disability which originates before 18 years of age, which continued or is expected to continue indefinitely, which constitutes a substantial handicap, and which is attributable to mental retardation, cerebral palsy, epilepsy, autism or other conditions found by the Commissioner of Human Services to give rise to an extended need for similar services [*N.J.S.A.* 30:11B–2]

> Mental illness shall mean mental disease to such an extent that a person so afflicted requires care and treatment for his own welfare, or the welfare of others, or of the community. [*N.J.S.A.* 30:4–23].

It is clear, therefore, that the terms are defined within the statutory scheme.

Nor can it be said that the statute vests unfettered discretion in the Commissioner of Human Services as defendants suggest. On the contrary, the statute contains certain limitations on the Commissioner's power. The fact that it gives the Commissioner a degree of discretion does not render it invalid. *See New Jersey Guild of Hearing Aid Dispensers v. Long,* 75 *N.J.* 544 (1978); *Motyka v. McCorkle,* 58 *N.J.* 165 (1971) and *Lane v. Holderman,* 40 *N.J.Super.* 329, 335 (App.Div.1956), aff'd 23 *N.J.* 304 (1956).

In view of the foregoing this court finds that defendants have failed to prove that the statute in question is unconstitutional. Accordingly, defendants have no justification for interfering with plaintiff's proposed use on the ground that it is unauthorized under the Elizabeth zoning ordinance.

It should be noted that this decision applies only to plaintiff's use of the property as a residence for the developmentally disabled, as provided for in *N.J.S.A.* 40:55D–66.1 *et seq.,* and not to its use of the property for its business office. It is quite clear that the latter use is subject to local zoning regulations which apparently prohibit such a use in the zone in question.