MARY LINCOLN CANDIES, INC., and Others, Plaintiffs, *v.* THE DEPARTMENT OF LABOR OF THE STATE OF NEW YORK and Others, Defendants.

Supreme Court, Erie County, November 26, 1940.

*Edward J. Garono* [*Charles J. Wick* of counsel], for the plaintiffs.

*John J. Bennett, Jr., Attorney-General* [*John C. Crary, Jr.,* of counsel], for the defendants.

LYTLE, J. This is an action brought pursuant to section 111 of the Labor Law which provides that any person in interest may bring such an action to determine the validity and reasonableness of any provision of the Labor Law or any order directing compliance therewith. It is in the nature of an appeal from a determination of the Board of Standards and Appeals.

The complaint seeks judgment that Directory Order No. 3, promulgated November 7, 1938, as applicable to the plaintiffs, be adjudged invalid and unreasonable, and that the defendant Labor Department and others be enjoined and restrained from enforcing

the provisions of such order, and for such other, further and different relief as to the court may seem just and proper.

By stipulation, the action is submitted for final disposition of all issues raised upon the record of proceedings of the Wage Board and the Industrial Commissioner in promulgating such order, and of the Board of Standards and Appeals.

The present article 19 of the Labor Law was added to the statutes of this State by chapter 276 of the Laws of 1937. The article begins with a recital of legislative fact finding followed by a statement of public policy, a practice which has become increasingly common in this era of so-called social legislation, and a form that has come to be associated with legislation of this character. It is to the general effect that women and minors are being employed in some industries at wages unreasonably low, not commensurate with the value of the services rendered and insufficient to provide adequate maintenance and protect health; that women and minors as a class are unable to bargain with their employers on an equal basis for minimum wage standards; that they are subject to the overreaching of inefficient, harsh or ignorant employers; that unscrupulous employers are able by constantly lowering wages to compete unfairly with other employers and employees; that the stability of industry in many instances is threatened. It is the declared public policy of the State that women and minors should receive wages sufficient to provide adequate maintenance and protect their health.

Said article empowers the Industrial Commissioner on his own initiative, and requires him upon petition of a stated number of persons, to investigate the wages being paid to women and minors in a given occupation. If the investigation or other information of the Commissioner shows that insufficient wages are being paid to a substantial number of women and minors in such occupation, the same shall be made the subject of a proceeding by a wage board.

A wage board is called up by the Commissioner and consists of an equal number of representatives of employers and employees of such occupation and of representatives of "the public." The board considers material presented by the Commissioner and makes a report which the Commissioner may accept or reject after a public hearing. If the report is accepted, the Commissioner shall make and promulgate a directory order settling minimum wage rates in said occupation and including regulations approved by the Commissioner. If the directory order is later made mandatory, its enforcement becomes implemented with penal sanctions.

An examination of the proceedings and steps taken prior to the promulgation of Directory Order No. 3 indicates a satisfactory compliance with formal requirements. This order relates to the confectionery industry. Except as hereinafter pointed out, it is reasonable and in reasonable compliance with the statute.

The requirements of said order are in part as follows: " III. GUARANTEED WAGES. A. PERIOD SEPTEMBER 1 to APRIL 1. 1. EMPLOYMENT for three days or less in any work week containing three or more *work days*, entitles an *employee* to at least $10.00 wages for that week. 2. IF *employee* is called to work on the fourth day, regardless of whether she works or not, that will be considered a full day of eight hours, and she will receive compensation of at least $11.20 for four *work days*. 3. EMPLOY-MENT during more than four *work days* in any work week entitles *employee* to a minimum compensation of at least $11.20 plus 35c [so in original] for each hour worked beyond the fourth *work day* up to and including the 40th hour. B. PERIOD APRIL 1 to SEPTEMBER 1. 1. EMPLOYMENT for two days or less in any work week containing two *work days* or more entitles *employee* to at least $7.00 wages for that week. 2. *IF employee* is called to work on the third day, regardless of whether she works or not, that will be considered a full day of eight hours and she will receive compensation of at least $8.40 for three *work days*. 3. EMPLOY-MENT during more than three *work days* in any work week entitles *employee* to a minimum compensation of at least $8.40 plus 35c [so in original] for each hour worked beyond the third *work day* up to and including the 40th hour."

In seeking the meaning and intent embodied in the above provisions for " Guaranteed Wages," the definition of a *work day* is of assistance. A work day is " a day of not more than eight hours." By inference, a day of less than eight hours constitutes a work day. During part of the year, " employment for three days or less " necessarily entails payment of ten dollars; during the balance of the year, " employment for two days or less " necessarily entails payment of seven dollars. By inference, any employment at all, regardless of how short the time, necessitates payment of one or the other of these sums of money, depending upon the portion of the year in which the employment takes place. An examination of the record filed by the defendants lends assurance that this is a correct and proper inference and the one intended to be drawn. (See Minutes of Public Hearings, pp. 403 *et seq.*)

It appears that the Wage Board and the Commissioner adhere to the position that these provisions of the order are desirable and necessary in the approach towards adequate minimum wages in

the industry. The coercion involved is by them considered to be desirable and necessary to make the statute effective.

The chief complaint of the plaintiffs is in substance that the requirement of " Guaranteed Wages " is so drastic and oppressive in its effect that it practically prevents the employer and employee from engaging in part-time relationship of any kind even if both are willing and the amount of work available prevents full-time relationship. To this the defendants answer that it is the hope of the Wage Board and the Commissioner that the industry can so regulate its operation that full-time employment will entirely replace part-time employment with the result that " Guaranteed Wages " for part-time employment, together with the accompanying difficulties, will find no application to the improved conditions. To do this the industry must improve its status and manner of operation and purge itself of the payment of improper wages, particularly as attendant upon part-time employment. Meanwhile, the employer is not to be heard to object to the alternatives afforded by the order; either paying for labor that is not used or going without labor that is necessary; either paying the guaranteed minimum regardless of the number of hours of gainful employment, or, if this cannot be done, desisting from those activities and endeavors that do not afford full-time employment. This answer to the complaint of the plaintiffs is not satisfactory or reasonable.

Accordingly, it is held that the provision for " Guaranteed Wages " is not reasonable and in reasonable compliance with the statute. Granting that the statute is remedial in character, still the rule of liberal construction should not be forced beyond what is necessary to accomplish the remedy intended. " It must be presumed that the Legislature, in making a radical change * * * would make its intent and purpose clear and * * * that it went no further than the mischief to be remedied required." (*Hennessy* v. *Walker*, 279 N. Y. 94, 98, 99.)

Were it the fact that the employers in the confectionery industry could unfailingly match the various periods of employment above set forth with gainful work to be done, then the practical effect of this order would be to compensate short periods of employment at about forty-one cents per hour in the months of September through March and at about forty-three cents per hour in the months of April through August. Such a result would not be objectionable; an order pursuant to a similar statute effecting an analogous result has been upheld in the Supreme Court of the United States, albeit by a closely balanced division thereof. (*West Coast Hotel Co.* v. *Parrish*, 300 U. S. 379.)

It satisfactorily appears, and the contrary is not seriously contended, that the employers in said industry will not be able to match the various specified periods of employment with gainful work. The character of the industry will necessarily make such an accomplishment infrequent. In the light of this fact, known alike to the Industrial Commissioner and the Confectionery Wage Board, it may be seen that the above-quoted portion of the order contemplates and will require payment of compensation when there is no work done or to be done. This is unreasonable; there is no authorization for it in the statute; it goes beyond the holding in *West Coast Hotel Co.* v. *Parrish (supra)*. It is doubtful whether any one, after reading the opinions in that case and in antecedent decisions, would seriously contend for an extension of the holding.

If Directory Order No. 3 had, in place of the above-quoted provisions, required an increase of the thirty-five-cent hourly minimum for instances of short-term employment, an incentive would have been given to employers to strive for an arrangement of work to afford as much full-time employment as possible. Such is the avowed purpose of the " Guaranteed Wage " provisions.

Section 110 of the Labor Law empowers the Board of Standards and Appeals to amend said order. Section 111 of the Labor Law empowers this court to refer the issues arising in this action to said Board for further consideration. The general prayer for relief in the complaint would encompass such determination. (*Savage* v. *Mathieson Alkali Works [Inc.]*, 174 Misc. 1022.)

Prepare and submit an order of reference accordingly.