MARY LINCOLN CANDIES, INC., et al., Respondents, *v.* DEPARTMENT OF LABOR OF THE STATE OF NEW YORK et al., Appellants.

Argued June 4, 1942; decided December 3, 1942.

The following questions were certified:

" 1. Are provisions for minimum weekly wages such as those of that portion of Directory Order No. 3 governing minimum wages in the confectionery industry, designated III and entitled ' GUARANTEED WAGES ' authorized by and within the scope of Article 19 of the Labor Law?

" 2. Upon the record herein are the minimum weekly wages fixed by Directory Order No. 3 in that portion thereof designated III and entitled ' GUARANTEED WAGES ' valid and reasonable?

" 3. Was remission of that portion of Directory Order No. 3 designated III entitled ' GUARANTEED WAGES ' to the Board of Standards and Appeals for amendment by that body authorized by law?

" 4. Are the provisions of the Federal Fair Labor Standards Act of 1938, relating to wages and hours of employment, exclusive and controlling over the provisions of any order, rule or regulation of the Department of Labor enacted pursuant to Article 19 of the New York State Labor Law, in so far as New York State employers, engaged in interstate commerce, are concerned."

*John J. Bennett, Jr., Attorney-General* (*Henry Epstein, John C. Crary, Jr.,* and *Milton Kaplan* of counsel), for appellants. The facts support the reasonableness of Directory Order No. 3 to effectuate the valid purpose of the Minimum Wage Law (Labor Law, art. 19; Cons. Laws, ch. 31). (*West Coast Hotel Co.* v. *Parrish,*

300 U. S. 379; *Townsend* v. *Yeomans,* 301 U. S. 441.) Directory Order No. 3 is a valid and proper order. (*Hutchins* v. *Dept. of Labor,* 173 Misc. Rep. 924; *Slaughterhouse Cases,* 16 Wall, 97; *McCulloch* v. *Maryland,* 4 Wheat. 360; *Nebbia* v. *New York,* 291 U. S. 502; *West Coast Hotel Co.* v. *Parrish,* 300 U. S. 379; *N. Y. C. R. R. Co.* v. *White,* 243 U. S. 188; *Mountain Timber Co.* v. *Washington,* 243 U. S. 219; *Carmichael* v. *Southern Coal & Coke Co.,* 301 U. S. 495; *Hegeman Farms Corp.* v. *Baldwin,* 293 U. S. 163 *Cotton Mills, Inc.,* v. *Administrator,* 312 U. S. 126.)

*J. A. A. Burnquist, Attorney-General* for State of Minnesota, *George F. Barrett, Attorney-General* for State of Illinois, *Frank R. Kenison, Attorney-General* for State of New Hampshire, *Alvin C. Strutz, Attorney-General* for State of North Dakota and *Grover A. Giles, Attorney-General* for State of Utah, *amici curiæ.*

*Charles J. Wick* and *Edward J. Garono* for respondents. Article 19 of the Labor Law governing minimum standards for women and minors in industry makes no provision, either directly or by intendment, for a guaranteed wage for part time employment irrespective of services actually rendered. (*People ex rel. Scharff* v. *Frost,* 198 N. Y. 110; *Matter of State Industrial Comm.* v. *Newman,* 222 N. Y. 363; *Johanns* v. *Ficke,* 224 N. Y. 513; *Ewen* v. *Thompson-Starrett Co.,* 208 N. Y. 245; *Flynn* v. *Prudential Ins. Co.,* 207 N. Y. 315; *East* v. *Brooklyn Heights R. R. Co.,* 195 N. Y. 409; *People* v. *Ahearn,* 196 N. Y. 221; *Cooper-Snell Co.* v. *State,* 230 N. Y. 249; *People ex rel. Steckler* v. *Warden of City Prison,* 259 N. Y. 430; *Schieffelin* v. *Lahey,* 243 N. Y. 102; *Matter of Doyle,* 180 App. Div. 398; *Sutliffe* v. *City of New York,* 132 App. Div. 831.)

DESMOND, J. There is open to us on this record one question only: May a minimum wage order under article 19 of the New York State Labor Law, validly fix a so-called " Guaranteed Wage " (for women and minors), that is, may such an order require employers not only to pay a minimum hourly rate to such employees, but also to pay that minimum hourly rate for a minimum number of hours per week? Although the Appellate Division certified to us a question, among others, as to the reasonableness of the hourly rate here fixed and of the number of hours for which that hourly

rate is required by the order to be paid, we find that the courts below reached no such question, and we, therefore, cannot and do not answer it (*Coatsworth* v. *Lehigh Valley Ry. Co.*, 156 N. Y. 451, 458.) For the same reason we return no answer to the certified question which inquires as to whether the Federal Fair Labor Standards Act of 1938 is controlling, as against article 19 of our Labor Law (Cons. Laws, ch. 31), in so far as New York State employers engaged in interstate commerce are concerned.

Directory Order No. 3, here under scrutiny, requires the payment of a minimum of ten dollars to any minor employee of either sex, or any adult female employee, who works three days or less in any week, during the " peak period " in the confectionery industry, and a minimum of seven dollars per week to any such employee who works two days or less in any week during the dull period in that industry. Directory Order No. 3 was promulgated by the Industrial Commissioner after full compliance with the elaborate statutory procedures as to investigation, hearings, wage board recommendations, etc. The manufacturers thereupon petitioned the Board of Standards and Appeals for a review, and that Board held the order to be valid and reasonable in all its parts. Then followed this suit against the State Department of Labor, under section 111 of the Labor Law " to determine the validity and reasonableness " of the order. While in form a suit against the State Labor Department, this litigation is in substance an appeal from the determination of the Board of Standards and Appeals. (Labor Law, § 111, subd. 2.)

Special Term upheld various provisions (not here in question) of Order No. 3 but struck down the provisions for " Guaranteed Wages " as " not reasonable and in reasonable compliance with the statute." (175 Misc. Rep. 399, 402.) The opinion in that court makes clear that the reasonableness of the " cents per hour " and " minimum hours to be paid for " directions of the Order were not passed on by Special Term, but only the validity under article 19 of the Labor Law, of any provision at all for a " Guaranteed wage." The Appellate Division affirmed.

The constitutionality of article 19 itself is, of course, not in question. (*West Coast Hotel Co.* v. *Parrish*, 300 U. S. 379.) But plaintiffs say this " Guaranteed Wages " feature of Directory Order No. 3

is not within the authorizations of article 19 since, they say, the Order requires payment to employees for services not rendered at all. Thus, again according to plaintiffs, the Order flouts section 555 of the Labor Law which requires that the commissioner and the wage board " take into account the value of the service or class of service rendered." We agree with plaintiffs that the phrase " may take into account " in section 555 means " *must* take into account " but we do not forget that the section calls upon the Wage Board and the Commissioner to take into account not only the worth of the labor, but also " the amount sufficient to provide adequate maintenance and to protect health." After computing both these amounts, the Board or Commissioner must arrive at a resultant. If they find that the amount required for decent maintenance is higher than the going market value of the work, are they to be limited to the latter? If the answer to that question must be " yes," then the statute accomplishes little or nothing as to the evils against which it was written. Recognizing this, the United States Supreme Court, in *West Coast Hotel Co.* v. *Parrish,* expressly overruled in 1937 its former holdings in *Adkins* v. *Children's Hospital* (261 U. S. 525), and similar cases, and held unobjectionable a minimum wage law (Session Laws of Washington, 1913, ch. 174, §§ 10, 11) which authorized the fixation of a wage " adequate in the occupation or industry in question to supply the necessary cost of living, and maintain the workers in health." The Supreme Court did say in the *West Coast* opinion that it might be assumed that minimum wages in the State of Washington are fixed " in consideration of the services that are performed in the particular occupations under normal conditions." (p. 396.) But the Washington statute in fact specified only one test of the minimum wage, the test of its adequacy to cover the cost of living of the female or minor employee.

The very concept of minimum wage legislation necessarily involves the determination of the cost of living and the fixing of a wage that will reasonably cover, or approach, that cost. The idea of a " living wage " is the heart and core of all such legislation. The earliest of the State minimum wage laws (Massachusetts, L. 1912, ch. 706) called upon the wage boards of that State to take into consideration " the needs of the employees " as well

as the effect on the industry of any increase in wages. The District of Columbia statute (40 Stat. 960) frowned upon by the Supreme Court in the *Adkins* case (*supra*), authorized the establishing of minimum wages " adequate to supply the necessary cost of living to * * * women workers." That statute passed upon in the *Adkins* case said nothing about value of services, or going rates, or anything of the sort, and it was held invalid for that reason, principally. In 1936 the original New York State minimum hour law (L. 1933, ch. 584) was similarly rejected by the Supreme Court (*Morehead* v. *New York*, 298 U. S. 587) because it apparently required the minimum wages fixed thereunder not only to be equal to the value of the services rendered but also to be sufficient to meet the minimum cost of living (see §§ 551 and 552 of that statute and this court's opinion in the *Morehead* case, 270 N. Y. 233, 238). When, finally, the Supreme Court took a different view of such statutes and decided that they were not unconstitutional (*West Coast Hotel Co.* v. *Parrish, supra*) it observed (300 U. S. p. 396) that the statutes in the *Adkins, Morehead* and *West Coast* cases, were all alike in so far as they all failed to make the value of the services a controlling test. It cannot be doubted that our Legislature had these rulings in mind when it passed in 1937 the minimum wage statute which we are here construing. And when it directed the Wage Board and the Commissioner to take into account the cost of adequate maintenance and health as well as the value of the services and the wages paid in the State for like work, the Legislature of course realized that a wage sufficient to provide a decent standard of living would sometimes exceed the strict bargain-and-sale value of the worker's services.

In reciting the " factual background " of our present minimum wage law, the Legislature declared that its purpose was " to secure wages sufficient to provide adequate maintenance and to protect the health of women and minors." (Labor Law, art. 19, § 550, added L. 1937, ch. 276.) It is fairly to be assumed that the Legislature, bent on seeing to it that women and minors should, so far as possible, receive subsistence wages for their work, appreciated that no hourly rate of wages could achieve that result unless it were multiplied by some appropriate number of hours. Plaintiffs' argument seems based on an assumption that article 19 set up only a system for

determining *hourly* rates of wages. The word " hour " or " hourly " appears nowhere in the law. Its heading reads: " Minimum Wage Standards for Women and Minors." The Legislature, driving toward its plainly marked goal, would have stopped far short of that goal if it had provided for minimum hourly wages only. The accomplishment of its high social purpose required a grant of authority to the Labor Department to make such orders as would in fact be directed toward providing a living wage, not merely an hourly rate which, in most industries, would not produce a living income, unless ordered paid for a sufficient minimum number of hours.

The words " Guaranteed Wages " mean no more than required or ordered wages. Directory Order No. 3 guarantees no work or wages to anyone. It requires no employer to hire or pay anyone. It fixes the minimum amount an employee is to get in any week wherein her services are needed and requested by the employer. Having called her into service, the employer, says the order, must pay her no less than ten dollars (in the rush season) or seven dollars (in the slack season). Plaintiffs say that at times they need less than three (or two) days work per week but that, under this order, they must either pay for services they do not need and cannot use or go without the workers' services entirely. Assuming that this is factually correct as to their industry, we still conclude that the order does not, for that reason, fail to stand the tests of section 555. We hold that a minimum wage order, to be valid under our statute, need not be consistent with the actual market value of the work actually done in every period of employment however short. The contrary argument, applied to extreme situations, leads to impossible results. If it be a valid objection to a minimum wage order that it requires, or may require, payment for work not actually needed or done, then an order mandating a thirty-five cents per hour wage would be illegal because the employer might need the worker for only a half hour, or ten minutes. Invalidating an order for such a reason would wipe the statute off the books. We do not agree, on this record, that this Wage Board paid no attention at all to the value of services or to the wages currently being paid in the industry. Both these subjects were inquired into and there are findings as to each. In fact, the Wage Board report says that,

because of conditions in the industry, it has in this order fixed wages which are *not* high enough for the proper maintenance of the workers. Certainly it does not appear as matter of law that in writing the terms of this order, the value of the services was entirely disregarded.

We do not hold that the Wage Boards have unlimited authority to make any extraordinary or whimsical requirements, as to hours and wages, that suit their fancy. The provisions of any such order must be reasonably fit for enforcement of the policy of the statute under the circumstances of the particular employment. We see nothing strange or startling about the requirements here. A week is not an unusual unit of wages or employment. Requiring payment, in a week where any work is done, for two-sevenths or three-sevenths of the days of that week, is not so plainly arbitrary as to offend against the statute itself. In this connection we take notice of the orders current in other States, as referred to in the brief filed here, in support of the Labor Department's position, by the Attorneys-General of Minnesota, Illinois, New Hampshire, North Dakota and Utah, as *amici curiæ*. All those states have Minimum Wage Acts which differ in no important way from article 19 of our Labor Law. Each of the Attorneys-General informs us that his state promulgates orders for " fixed or established weekly wages." Plaintiffs say that no order promulgated in any of those five states " goes so far as to guarantee wages for the whole week or part of a week," but plaintiffs' own analysis of various orders in effect in those other states shows, we think, the contrary. In three of the states (Illinois, New Hampshire and Utah) there are found orders which in effect " guarantee " a worker at least four hours pay on any day she is called to work. Other orders, in those three and the other two states, fix a higher rate of wage per hour in any week where less than a minimum number of hours employment is furnished. It is our view that all these orders proceed on the same theory as does the order under attack in this suit, the theory that part time employment must, by the application of some formula, produce more money return to the worker than she would receive if her pay envelope contained only an amount arrived at by multiplying the market value of her hourly service by the exact number of actual hours work which the employer had made

available to her. The differences between these various orders are differences of detail, approach and formulation. The theory, the objective and the general method are the same in every instance.

The judgments should be reversed and the action remitted to the Special Term for proceedings not inconsistent with this opinion with costs in all courts to the appellants to abide the event. The first question certified should be answered in the affirmative and the third in the negative. The second and fourth questions certified are not answered.

FINCH, J. (dissenting). The primary question presented for decision on this appeal is whether article 19 of the Labor Law authorizes a directory order issued to the confectionery industry by the Department of Labor providing for a so-called guaranteed wage for part time employment. Such a guaranteed wage is based solely upon an amount considered sufficient to provide adequate maintenance and to protect health without regard to the value of the services rendered. Directory Order No. 3, the Order in question, besides providing for a basic hourly rate of thirty-five cents an hour, requires that employees must be paid a minimum of ten dollars for three days or less during the peak period and seven dollars for two days or less during the slack period irrespective of the amount of time actually worked. It is conceded that these provisions of this order mean that: " if an experienced employee works for any period whatever (e. g., ten minutes) in a week during which the employer's establishment is in operation for the given two days or three (according as the industry is ' sluggish ' or ' at peak '), then the so-called guaranteed weekly minimum wage is to be paid. (This construction is not disputed.) " By this regulation no attempt has been made to compensate short periods of employment at an increased rate per hour, but a flat rate of ten dollars or seven dollars is fixed for a work period, however short, and hence without taking into account the value of the service rendered. This order in effect outlaws part time employment with the result that the only alternative for an employee or an employer is either for the latter to pay for labor that is not used or for both to be deprived of part time labor that is necessary for both.

While it is not contested in fact or in principle that article 19 authorizes a guaranteed minimum weekly wage in return for a full week's work, it is submitted that no authority is conferred by this statute, either directly or by fair intendment, permitting the establishment of guaranteed wages for part time employment irrespective of services rendered. Concededly there exists no provision in article 19 expressly providing for the fixing of wages based solely upon an amount considered adequate to provide maintenance and protect health without regard to the value of the services rendered. Under other circumstances the question might arise whether such authority is conferred by fair implication or intendment. But in the case at bar we have a principle of statutory construction that, in the absence of a clear expression of legislative intent, it will not be inferred that the statute was intended to abolish traditional common law concepts or outlaw recognized common law relationships. Certainly up to the time of the enactment of article 19 there had not been established in New York State the principle that wages may be fixed wholly on the basis of what the Wage Board or the Commissioner may deem sufficient to provide adequate maintenance and to protect health. Therefore, since the order in question in fact outlaws part time employment and changes the traditional concept of " wages " as a return for services actually rendered, we must find clear and unambiguous language in the statute to authorize such administrative action.

A reading of the statute shows that it is implicit therein, when read both as a whole and with emphasis on the particular language used, that the Wage Board and the Commissioner are not authorized to fix a guaranteed wage for part time employment irrespective of service actually rendered. The introductory section (550), denominated " Factual background," expressly states that the mischief to be remedied is the employment of women and minors at " wages insufficient to provide adequate maintenance and to protect health and unreasonably low and not fairly commensurate with the value of the services rendered. Such a condition is contrary to public interest and public policy commands its regulation."

Thus the evil complained of is expressly stated to be comprised of two attributes, namely, wages insufficient to provide adequate

maintenance and to protect health, and at the same time unreasonably low and not fairly commensurate with the value of the services rendered. In section 555 of this same article 19, captioned " Basis of Minimum Wage," the Legislature has enacted in similar language not only that the Commissioner take into account an amount sufficient to provide adequate maintenance and to protect health, but " the value of the service or class of service rendered  *   *   *," and " the wages paid in the state for work of like or comparable character." Surely the express coupling of the factors of value of services and the wages paid in the State for work of like character with the factor of amount sufficient for maintenance and protection of health would lead to a strong inference that power has not been conferred to fix wages irrespective of the value of the services rendered.

In addition, in section 556 the statute is very specific and detailed in providing that the regulations adopted by the Wage Board: " may among other things define and govern learners and apprentices, their rates, number, proportion or length of service, piece rates or their relation to time rates, overtime or part-time rates, bonuses or special pay for special or extra work, deductions for board, lodging, apparel or other items or services supplied by the employer, and other special conditions or circumstances."

Where the statute is so exact in defining the minute powers which the Board possesses, and at the same time makes no mention whatever of the extraordinary power to fix guaranteed wages irrespective of services rendered, and in some instances where no services at all are rendered, it would seem a fair inference that the Legislature did not intend to give such power to the Board. If such had been the intention of the Legislature, it could very easily have included a provision to that effect. To find so great and novel a power conferred upon the Wage Board and the Commissioner in the absence of clear legislative expression, is to fly in the face of the settled principle of statutory construction, that a grant of such power will not be inferred from what is at best ambiguous language.

On the contrary, the statute prescribes that the Wage Board is to recommend " Minimum Wage Rates " and such regulations as may be deemed appropriate to safeguard the minimum wage

standards recommended without departing from such basic minimum rates. Thus, the statute as a whole talks about and deals with wages and wage rates. " Wage " has always been construed by the courts in New York to mean compensation for services rendered. (*Walsh* v. *City of New York*, 143 App. Div. 150; *Shane* v. *City of New York*, 135 App. Div. 218.) The term " rate " is defined as the amount or degree of a thing measured per unit of something else. Thus, when used in conjunction with " wage," the term connotes compensation measured by the hour, day or week actually worked.

Looked at realistically, a distinction exists between wages sufficient to meet a minimum cost of living necessary for health, when an employee is working on a full time basis, and wages sufficient to meet adequate maintenance necessary for health when an employee, through no fault of the employer, can find only part-time employment. The principle involved is not inconsequential. If, as advocated by appellant, it is held that by intendment the Legislature empowered the establishment of a minimum guaranteed wage for part time employment irrespective of services rendered, then it follows that wages may be guaranteed on a monthly or yearly basis irrespective of services rendered. This follows as a necessary corollary to the contention of appellant that the Legislature intended to confer such power in relation to part time employment.

Starting with a laudable effort to raise wages which were not commensurate with the value of the services rendered through employment of the police power in aid of adequate maintenance for women and minors, the Wage Board and the Commissioner have swung to the other extreme and interpreted the statute to provide for a wage rate for part time employment without any regard to the value of the services rendered.

Since this appeal may rest upon the decision of the construction of article 19, it becomes unnecessary to consider the constitutional questions involved.

It follows that the judgment appealed from should be affirmed, the first question certified answered in the negative, the third

question in the affirmative, and the other questions not answered, without costs of this appeal to any party.

LEHMAN, Ch. J., LOUGHRAN and RIPPEY, JJ., concur with DESMOND, J.; FINCH, J., dissents in opinion in which LEWIS and CONWAY, JJ., concur.

Judgments reversed, etc.