In the Matter of WELLS PLAZA CORP. et al., Respondents. INDUSTRIAL COMMISSIONER OF THE STATE OF NEW YORK, Appellant. NEW YORK HOTEL TRADES COUNCIL, AFL–CIO, Intervenor-Appellant.

Third Department, March 28, 1960.

*Louis J. Lefkowitz, Attorney-General (Paxton Blair* and *Jerome Lefkowitz* of counsel), for appellant.

*Lord, Day & Lord (Charles W. Merritt* and *Jack P. Jefferies* of counsel), for respondents.

*Boudin, Cohn & Glickstein (Samuel Harris Cohen* of counsel), for intervenor-appellant.

GIBSON, J. Appeal is taken from a decision of the Board of Standards and Appeals of the State Labor Department which held that certain provisions of a revised minimum wage order for the hotel industry as promulgated by the Industrial Commissioner were invalid and unreasonable, and modified, amended and reversed the order accordingly.

On January 24, 1957, the Industrial Commissioner, acting pursuant to section 654 of the Labor Law, convened a new Minimum Wage Board to review the existing minimum wage order applicable to the hotel industry and to report its recommendations. As required by section 656 of the act, the board was composed of three representatives of employers, three representatives of employees and three persons chosen to represent the public interest. The board received a great mass of statistical and other evidentiary data, conducted hearings throughout the State, at which testimony was taken, and thereupon presented to the Industrial Commissioner its recommendations, from which the three representatives of industry dissented.

The Commissioner proceeded pursuant to section 657 of the Labor Law to hold hearings in six cities within the State to take testimony and receive comments as to the proposed order; after which he rejected the recommendations of the Minimum Wage Board insofar as they applied to resort hotels but approved and accepted the remainder of the report and on November 15, 1957 issued his wage order accordingly, to become effective January 13, 1958.

Petitions for review by the Board of Standards and Appeals (Labor Law, §§ 662, 110) were filed by 85 owners or operators

of all-year hotels in New York State. The Appeals Board proceeded to hold hearings at which testimony was taken and other evidence received and on May 5, 1959, issued its decision, whereby the Commissioner's order was, in four respects, found invalid or unreasonable or both and was in all other respects sustained. From that decision the Industrial Commissioner and the intervenor New York Hotel Trades Council, AFL–CIO, have separately appealed.

We deal first with petitioners-respondents' motions to dismiss the appeals as in each case taken without statutory authority.

Section 662 of the Labor Law provides for the review of minimum wage orders as follows: "All questions of fact arising under this article except as otherwise herein provided shall be decided by the commissioner and there shall be no appeal from his decision on any such question of fact, but there shall be a right of review by the board of standards and appeals as provided in section one hundred and ten, article three of the labor law. Appeals from the determination of the board of standards and appeals shall be taken direct to the appellate division of the supreme court, third judicial department on any question of law included or embodied in any decision or order thus reviewed."

Section 110, to which reference is thus made, in part provides: "1. Any person in interest or his duly authorized agent may petition the board of standards and appeals for a review of the validity or reasonableness of any rule or order made under the provisions of this chapter." In dealing with this subdivision and with other provisions of section 110 it is well to bear in mind that section 110, unlike section 662 above quoted, does not relate solely to minimum wage orders but to "any rule or order made under the provisions of this chapter" and this distinction may account for some of the difficulty encountered in its construction. It seems quite clear nevertheless, and indeed vital to any appeal process of an adversary nature, that any party who was properly before the Appeals Board as a "person in interest" may appeal from its adverse decision and this seems to us the undoubted purport of section 662 and, in part, the significance of its reference to section 110. That the Industrial Commissioner is a party before the Appeals Board cannot seriously be doubted. The rules of the Appeals Board recognize that such is his status as, indeed, did petitioners in this case in taking the position before the board that "he is in fact a respondent". It follows that he is properly an appellant here. In advancing their contrary contention, petitioners note that prior to its amendment in 1942, section 662 (then § 562)

provided "a right of review by the board of standards and appeals *and the courts* as provided in *article three*". (Italics supplied.) Article 3, then as now, included both sections 110 and 111, the latter providing, *inter alia*, for an action in the Supreme Court "*against the department*" (italics supplied) and for appeal to the Appellate Division. Thus, Mr. Robert M. Benjamin quite logically observed that this language (carried forward from a date prior to the reorganization in 1921 of the department by "the discontinuance of the Industrial Commission and its replacement by an Industrial Commissioner as the head of the Department and an Industrial Board as a quasi-legislative and quasi-judicial board within the Department") "makes it appear that the Industrial Commissioner cannot himself seek court review where the Board's decision is adverse". (5 Benjamin, Administrative Adjudication, p. 181.) The 1942 amendment substituted the present language, which, as first above quoted, refers to section 110 only and provides for appeals to the Appellate Division specifically. Petitioners stress Mr. Benjamin's comment that the amendment, enacted shortly before publication of his report, was influenced by the realization of the possibilities of delay inherent in the prior statute (*op. cit.*, p. 225) and his remark by way of footnote that "the sole purpose of the amendment was to change the court in which the review proceedings might be initiated" (*op. cit.*, p. 190, n. 29). We read this, however, in the light of the author's considered conclusion (p. 181), expressed prior to the amendment, that "There is no indication in the history of the statute of any deliberate legislative intent to limit the Industrial Commissioner's right to review." In dealing with another and quite unrelated statute, the Court of Appeals expressed a conclusion which seems particularly apt in this case, holding: "The same words which had been judicially construed before the section was amended assume a different aspect in their new setting in the amended section. The construction which the court held gave effect to the legislative intent as indicated in the original section might thwart the enlarged legislative purpose as indicated in the amended section." (*Matter of Curtin* v. *City of New York,* 287 N. Y. 338, 342.) We conclude that the motion to dismiss the Industrial Commissioner's appeal must be denied.

Respondents' motion to dismiss the appeal taken by the intervenor New York Hotel Trades Council, AFL–CIO must likewise be denied. The intervenor is a federation of eight local hotel employees' unions in New York City and as the representative of approximately 35,000 hotel employees has collective bargaining agreements with some 200 hotels. In 1955 and 1956 it peti-

tioned on behalf of 51 hotel employees to initiate proceedings to reconvene the Wage Board (cf. Labor Law, § 661, subd. 1) and participated in the hearings before that board, claiming to be an "interested party" (cf. Labor Law, § 656, subd. 9). Subsequently, the Appeals Board permitted it to intervene in the review proceeding under the board's rules, whereby its status was that of a party. In view of our conclusion that the case is properly before us on the appeal of the Industrial Commissioner, the objection interposed to the presentation of similar argument by the intervenor is largely academic in any event, but we consider that intervenor was a party and person in interest and thus entitled to appeal.

We turn now to the merits. The petitioners alleged before the Board of Standards and Appeals a number of respects in which the minimum wage order was invalid and unreasonable. The Appeals Board held with petitioners as to four of them, finding (1) that the order was invalid in respect of the minimum wage rates fixed for bellboys and bus boys in New York City hotels and for all employees in all-year hotels outside of New York City; (2) that the order was unreasonable in failing to provide for deduction from the minimum wage rate of the value of so-called fringe benefits paid by many employers pursuant to contractual obligation; (3) that the order was invalid in respect of the provisions which established a minimum wage rate for nonservice, nonresidential employees of all-year hotels outside of New York City but deferred its application by providing for graduated increases to such minimum over a nine months' period; and (4) that the order was invalid and unreasonable insofar as it fixed minimum rates for residential employees at hotels outside of New York City without distinction between service employees (i.e., employees receiving tips) and nonservice employees. The validity of the order was sustained as against petitioners' remaining objections.

Upon this appeal we must, of course, give full effect to the emphatic statutory mandates, first, that no appeal lies from the Commissioner's decision on any question of fact (Labor Law, § 662) and, second, that the Appeals Board may review only the validity and reasonableness of his order (Labor Law, § 110, subd. 1).

The most significant and far-reaching of the Appeals Board's holdings was that the order failed to "take into account the value of the service or class of service rendered" (Labor Law, § 655, subd. [2]) by bellboys and bus boys in New York City hotels and by employees generally in all-year hotels outside of New York City. On the basis of the omission thus found, it was

determined that the order was invalid in respect of the minimum wage rates fixed for these employees.

In reaching its determination, the Appeals Board cited from *Lincoln Candies* v. *Department of Labor* (289 N. Y. 262, 266) the following: '' We agree with plaintiffs that the phrase ' may take into account ' in section 555 [now 655] means ' *must* take into account ' but we do not forget that the section calls upon the Wage Board and the Commissioner to take into account not only the worth of the labor, but also ' the amount sufficient to provide adequate maintenance and to protect health.' After computing both these amounts, the Board or Commissioner must arrive at a resultant.'' It seems reasonably clear (despite petitioners' contention for a contrary interpretation) that the Appeals Board considered that the '' resultant '' must be determined by application of a mathematical formula or by some comparable process. Thus, the Appeals Board said, the value of the service is the sales price, '' expressed in terms of dollars and cents '', obtainable by the worker in the existing labor market and this '' wage rate figure '' is '' an indispensable factor in the basis for the minimum wage to be recommended '' by the Wage Board. It does not seem to us that the *Lincoln* decision mandates so narrow a treatment and it is certain indeed that the wage rate structure there approved was by no means the product of the precise and objective mathematical computation which the Appeals Board would infer from the language of the opinion. The Attorney-General argues with some force that if the basis of this wage order is insufficient in the respect found, then every other wage order ever promulgated under the New York statute is similarly defective.

Further, the immutable process envisaged by the Appeals Board seems clearly inconsistent with the theory and intent underlying the statutory provisions for a tripartite Wage Board constituted by representatives of normally conflicting interests and of the public (Labor Law, § 656, subd. 1). If the Appeals Board's theory be valid, there would seem little room for the consultative and deliberative approach and the give and take process which are inevitable implications of the tripartite board method which the Legislature has prescribed; and no justification, certainly, for an end result attained, as that method contemplates, by compromise and mutual concessions.

In further support of its holding as to the factor of the value of the services, the Appeals Board said that, unlike the *Lincoln* case (*supra*), there was here '' no finding by the Wage Board as to the value of services and no finding as to the wages currently being paid in the hotel industry.'' Actually, however, current

wages are set forth in particularity and detail, two pages being devoted to them and the data there compiled being elsewhere expressly referred to and made a part of the findings. There was before the Wage Board a great mass of documentary and other evidentiary data relevant to the factor of value and which, it must be presumed, was given consideration and appropriate weight; and which, most certainly, afforded ample basis for the Wage Board's report and the Commissioner's determination. This material included the evidence with respect to wages currently paid, as to which the Appeals Board expressed concern. The amounts of such wages — in some cases fixed by the employers and in others by collective bargaining — are of obvious importance to the consideration and determination of at least minimum values of services. This being so, the Appeals Board's surprising conclusion that this evidence was not '' considered '' by the Wage Board as bearing upon the value of the services seems unwarranted and is in any event unsupported by any reference to the record.

The failure of the Wage Board to specify the value of services, expressed, as the Appeals Board would have it, '' in terms of dollars and cents '' does not, in our view, render the wage order fatally defective. The various occupations within the industry were discussed in respect of skill, training and ability. Elsewhere in the report were proof and findings of various elements pertinent to the evaluation of the services. The section devoted to and designated '' Value of Services '' concluded with the statement: '' The Board therefore finds that no occupation to which this order applies is worth less than the minimum recommended.'' The Appeals Board held this finding '' without meaning '' but it seems comprehensible enough. In our theory of the purpose and intent of the Wage Board system, the finding was sufficient. Its effect was to announce that the board had evaluated the services and classes of services involved and had taken those values into account in establishing wage rates which did not exceed such values. One purpose of findings is, of course, to aid intelligent judicial review but under the somewhat unusual procedure prescribed by the Labor Law, the insertion of some figure denoting value would not materially assist review or analysis of a tripartite board report properly arrived at in somewhat general fashion and reflecting the divergent views of adverse interests. The effect of the finding was not vitiated by the Wage Board's prior and gratuitous expression of its view that, '' It is the theory of the minimum wage law that the services of an essential employee are worth at least what it costs for that employee to maintain himself adequately

and protect his health." In point of fact, the minimum rates recommended were substantially lower than the cost-of-living figures which the board adopted, and thereupon used only "as a ceiling beyond which it was not empowered to set wages." (Cf. *Lincoln Candies* v. *Department of Labor*, 289 N. Y. 262, 268–269, *supra*.)

We therefore find no warrant for the Appeals Board's determination of invalidity of the wage order in respect of the minimum wages fixed for hotel bellboys and bus boys in New York City and for all employees of all-year hotels elsewhere.

The Appeals Board also held with petitioners upon the issue of "fringe benefits", as petitioners term "life insurance, disability benefits, hospitalization, pensions and other benefits" paid by many employers. The Appeals Board found that such payments served to "defray for the employee part of his required subsistence cost" and treated the cost of such benefits borne by the employer as closely analogous to the cost of meals and lodging furnished an employee and "implicitly recognized in the order" as constituting part of the required wage payment. Accordingly, the Appeals Board found the order unreasonable in failing "to make provision for deductions or allowances from the required minimum rate in favor of employers contractually obligated to pay and actually paying for the benefit of the employee  *  *  *  the value of goods, services or rights  *  *  *  for the adequate maintenance of the employee and the protection of his health."

As the Appeals Board and the petitioners seem to recognize, there was ample evidence upon the subject of fringe benefits and we may not assume that the Wage Board failed to consider it as bearing upon the cost of adequate maintenance (Labor Law, § 655, subd. [1]). Its omission to act, as it had acted with respect to meals and lodging furnished by employers, was deliberate. To the extent that the result be deemed to represent a factual determination, it is supported by substantial evidence and to that same extent the Appeals Board's intervention was, of course, unwarranted. We consider that, in any event, the board erred in considering contractual benefits of this nature, obtained upon negotiation, as completely analogous to the basic necessities of food and shelter furnished on-premises employees. In view of the interrelationship, and, indeed, complete interdependence, of wages and unemployment insurance benefits, the definition of wages for purposes of the Unemployment Insurance Law (Labor Law, art. 18) is of particular import here. Under the latter act, "wages" means "all remuneration paid" and the term "remuneration" specifically excludes all fringe

benefits of the kind treated by the Appeals Board. (Labor Law, § 518, subd. 1; § 517, subd. 2.) Except as to meals and lodging, wages are customarily considered as payments of cash and upon this record the Wage Board may not be held to have acted unreasonably in holding to that concept. (Cf. *United States* v. *Embassy Restaurant*, 359 U. S. 29, 32; *People* v. *Vetri*, 309 N. Y. 401, 406–407.) It follows that the decision of the Appeals Board as respects fringe benefits was in error.

The Appeals Board held invalid, also, the provision of the order which established a minimum wage rate of $1 per hour for nonservice, nonresidential employees of all-year hotels outside New York City but deferred its effective date by providing a graduated increase, to 85 cents from January 13, 1958, to 90 cents from July 13, 1958 and to $1 from October 16, 1958. The Wage Board stated that a fairly large group of up-State employers not now paying the $1 rate would " require a period of time in which to adjust their wage scales ". The parties seem to agree that an immediate increase would work " very heavy financial hardship ". By a markedly strained interpretation of the order, the Appeals Board found that it attempted to fix an immediate minimum rate of 85 cents without regard to the statutory bases, and at the same time to fix future minimum rates without regard to unknown future conditions; and on this basis the Appeals Board found the order in contravention of the statute and invalid. It is entirely clear, however, that the minimum rate was presently fixed and was $1; and that the legal question involved is merely as to the propriety of the deferment· of the date upon which it should become completely effective. We conceive the test to be that of reasonableness, and we find that the decision was within an area of reasonable administrative discretion into which the reviewing authority may not intrude. There has been no judicial construction of the statute as respects the Commissioner's power. There is no express provision to permit or to prohibit a reasonable period for adjustment to a new and sweeping order; and we are unable to say that there was no " ' reasonable basis in law ' " for the Commissioner's construction implicit in his order. (*Matter of Mounting & Finishing Co.* v. *McGoldrick*, 294 N. Y. 104, 108.) Pertinent to and strongly buttressing this conclusion is the fact that since 1938 the Industrial Commissioner has consistently construed the statute as empowering him to direct a graduated increase and his authority in that respect has not heretofore been challenged although many orders embodying such provisions have been appealed on other grounds. (See *Matter of Kolb* v. *Holling*, 285 N. Y. 104, 112.)

Finally, the Appeals Board found the order invalid and unreasonable insofar as it fixed minimum wage rates for residential employees at hotels outside of New York City without distinction between service employees (this being the term for employees receiving tips) and nonservice employees. The Appeals Board remarks upon the supposed intent of the Wage Board " to make general distinction throughout the industry between tips-receiving and nontips-receiving employees " and concludes that, " The apparent injustice of the failure to provide the distinction in respect to residential employees appears to us to have been inadvertent in view of this expression of intent."

In his brief, however, the Industrial Commissioner denies any inadvertence and asserts that the order continued a practice existing since the first hotel wage order became effective in 1940 and cites the Wage Board report of that year, which notes various reasons for the determination to omit any distinction. The 1947 and 1950 Wage Board reports continued the omission of the asserted distinction. Petitioners have not challenged the accuracy of the computations set forth in the Attorney-General's brief from which he concludes that no more than 150 workers in an industry of 59,600 could be affected and that by reason of the extra wages paid nonresidential, but not to residential service employees, for working split shifts, the actual wage differential is slight. The petitioners' objections seem to us *de minimis*. In such a situation, the Commissioner's failure to impose upon the industry the administrative burden of an additional classification cannot be deemed arbitrary nor the order be held invalid.

Petitioners urge here the additional objections presented by their petitions and as to which the Appeals Board held against them. All of the determinations complained of were, so far as factual, within the wide area of decision allotted to the Commissioner and none seems to us without support in substantial evidence. Neither do we find any arbitrary or unreasonable action on the part of the Commissioner in his application of the statute.

The conclusion which we have reached upon the merits renders academic appellants' forceful contention that, in the conduct of its hearings and in the reception of evidence, the Appeals Board on occasion overstepped the bounds of its authority and trespassed within the area of factual exploration expressly committed to the Industrial Commissioner (Labor Law, §§ 662, 110, subd. 1). To the extent that the permissive provision for hearings by the Appeals Board (Labor Law, § 110, subd. 3) may require clarification or may be considered either unnecessary or unsuited to a review of orders of the particular nature here

220

involved, the remedy, of course, lies with the Legislature. In fairness to the Appeals Board, it must be said, however, that ultimately it seems to have looked for essential factual background to the Wage Board's record rather than to that compiled by it. In this case, therefore, the Appeals Board's occasional excursions into the realm of fact did not prejudice the result but are subject to valid criticism nevertheless since the process was time consuming and protracted, with the result that a minimum wage order promulgated in 1957, and found by us completely valid, has not yet become effective.

The decision should be reversed, with one bill of costs to appellants.

BERGAN, P. J., COON, HERLIHY and REYNOLDS, JJ., concur.

Decision reversed, with one bill of costs to appellants. Settle order.