COUNCIL OF NEW JERSEY HAIRDRESSERS, INC., *ET AL.*, PETITIONERS v. RAYMOND F. MALE, COMMISSIONER OF LABOR AND INDUSTRY OF THE STATE OF NEW JERSEY, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued June 5, 1961—Decided July 11, 1961.

382

Before Judges FOLEY, LEWIS and LABRECQUE.

*Mr. Charles E. Villanueva* argued the cause for petitioners.

*Mr. Robert S. Miller,* Deputy Attorney General, argued the cause for respondent (*Mr. David D. Furman,* Attorney General of New Jersey, attorney).

The opinion of the court was delivered by

FOLEY, J. A. D. This matter comes before the court on a petition for a declaratory judgment under *R. R.* 4:88–10, adjudging as invalid a rule promulgated by the Commissioner of Labor and Industry, pursuant to the Minimum Wage Standards Law, *N. J. S.* 34:11–34, *et seq.*

The rule designated Mandatory Order No. 12, adopted November 17, 1960, effective May 17, 1961, fixes the minimum wage standards governing employment of women and minors in beauty culture occupations. It provides:

1. Operators shall be paid not less than $1.25 per hour "during the six months following the date of initial hire in a given establishment," thereafter they are to be paid at the rate of $1.50 per hour..

2. Employees on a Senior Student Permit or Temporary Permit shall be paid not less than $1.25 per hour.

3. Maids, cleaning women, porters, shoe shine boys shall be paid not less than $1.25 per hour.

4. Other employees not specifically provided for shall be paid not less than $1.35 per hour.

5. "The minimum wage to be paid to an employee for any day, or part of a day, in which the employee has been required or authorized to report for work, and has reported for work, shall be not less than four times the employee's regular hourly wage rate."

The order further provides for overtime and furnishing of materials by the employer. It requires that employers keep records; it states that "in no case shall tips or gratuities from patrons be counted as part of the minimum wage or regular wage rate being paid to an employee"; and it sets forth necessary definitions, and provides penalties for noncompliance. This order supersedes mandatory order No. 5 which became effective January 10, 1943 and set a minimum of 40 cents per hour for hourly employees.

R. S. 34:11–39 provides that if "the commissioner on the basis of information acquired by special investigation or otherwise is of the opinion that a substantial number of women or minors in any occupation or occupations are receiving oppressive and unreasonable wages, he shall appoint a wage board to report upon the establishment of minimum fair wage rates for women and minors in such occupation or occupations." Pursuant to this authority the Commissioner appointed a wage board, the organizational meeting of which was held on May 24, 1960. Thereafter, the board held five meetings, the last on July 11, 1960. During its meetings and deliberations the board had available various studies and materials relating to living costs for women workers in the State, wages and hours prevailing in the beauty culture industry, and earnings in other occupations. A public hearing was conducted on June 27, 1960.

Subsequent to its final meeting the board submitted a report and recommendations to the Commissioner. On July 29, 1960 the Commissioner accepted the report and arranged for a public hearing which was held on September 14, 1960. On August 17, 1960 the Commissioner called a special meeting of the board for the purpose of discussing the question of tipping in the industry.

At the public hearing numerous persons testified concerning the recommended minimum wage, variant and conflicting opinions being expressed. On September 23, 1960 the Commissioner specifically approved the recommendations of the board as they related to minimum wages, except

in two particulars which are of no significance on this appeal. The Commissioner took no action on a recommendation of the board that a survey be made "of the economic impact of this Wage Order on the employees, shop owners and consumers of beauty culture services in the State of New Jersey."

Preliminarily, it may be well to set forth the legislative policy which the Minimum Wage Standards law is designed to serve, and the scope of the statutory authority invested in the Commissioner and the wage board.

R. S. 34:11–36 provides:

"The employment of a woman or minor in an occupation in this state at an oppressive and unreasonable wage is hereby declared to be contrary to public policy and any contract, agreement or understanding for or in relation to such employment shall be void."

An "oppressive and unreasonable wage" is defined in the act as a wage "which is both less than the fair and reasonable value of the services rendered and less than sufficient to meet the minimum cost of living necessary for health." A "fair wage" is defined as a "wage fairly and reasonably commensurate with the value of the service or class of service rendered." N. J. S. 34:11–34.

The Commissioner and the board in establishing a minimum fair wage under the act consider: (1) all relevant circumstances affecting the value of the service or class of service rendered; (2) wages paid in the State for work of like or comparable character by employers who voluntarily maintain minimum wage standards; and (3) the factors which a court would consider in a *quantum meruit* suit. *Lane v. Holderman*, 23 *N. J.* 304, 312 (1957).

The crux of the appeal is the contention that the minimum wages recommended by the board and adopted by the Commissioner are excessive in amount. The approach taken by the petitioners is that: (1) the order does not establish a "minimum wage" but is "governmental price fixing

without legislative authority or standards," and illegally supplants individual or collective bargaining in the beauty culture industry; (2) the failure of the Commissioner to carry out the recommendation of the board that a survey be made, vitiated the wage order; and further that contrary to *N. J. S. A.* 34:11–47, the Commissioner did not approve the board's proposals within ten days of the public hearing; (3) the order is invalid for lack of standards by which to fix a minimum wage; and (4) the order is "arbitrary, capricious and unreasonable and without any legal or factual justification" in that it did not consider various sectors of the State's economy, tips, and the fact that in 1959 the median wage of all workers in the beauty culture industry was $1.43 per hour.

The essential questions for our determination are whether the wage rate set forth in Mandatory Order No. 12 carries out the will of the Legislature. *Hotel Suburban System v. Holderman,* 42 *N. J. Super.* 84 (*App. Div.* 1956); and whether a comparison of the evidence and considerations before the board with their recommendations reveals that a determination was made consistent with the legislative standards.

The wage board does not have unlimited authority to make extraordinary or whimsical recommendations as to hours and wages that suit their fancy. *Mary Lincoln Candies v. Department of Labor,* 289 *N. Y.* 262, 45 *N. E. 2d* 434, 143 *A. L. R.* 1078 (*Ct. App.* 1942). The provisions of any such order must be reasonably fit for enforcement of the policy of the statute under the circumstances of the particular employment. *Id.*

Initially, petitioners urge that "a minimum wage establishes what the least qualified worker doing most poorly the least productive job has to be paid as a condition of his employment" and that "the minimum is the floor from which all other wages in a company or industry have to be scaled upward, and beneath which the only step is to be fired." We cannot accept this concept since it completely

overlooks the fact that the basic purpose of the act was to provide a *fair* wage which, as we have already noted, is one fairly and reasonably commensurate with the value of the service rendered, and not oppressive or unreasonable, in the sense that it is less than sufficient to meet the minimum cost of living necessary for health.

■ Tested by this standard we find ample documentary evidence in the record to support the board's conclusions; and the minutes of the various meetings which preceded the report furnish strong indication that it proceeded from a well reasoned evaluation of the factors to be considered by the wage board, as hereinabove set forth. In addition to the views expressed by those who attended the public hearing the board had before it a cost of living study for women workers in the State, prepared by the Department of Labor and Industry in September of 1958. It established that the annual cost of adequate maintenance and protection of health of a woman living alone is $3,479.10. This amounts to a weekly sum of $66.91, or $1.67 per hour for a forty-hour week, as opposed to $60 per week or $1.50 per hour as provided by the Wage Order.

■ At two places in petitioners' written argument they advert to the fact that beauty culture operators perform *personal services*. If by this it is implied that the nature of the services rendered, *i. e.*, "personal services," immunizes the beauty culture industry from the Minimum Wage Standards law, we deem the contention to be devoid of merit. Neither the language of the statute, nor the social purposes it is designed to foster, give reason to this interpretation.

Lastly under this point, it is urged that the fixing of a rate by the Commissioner constituted "governmental price fixing." To the extent that this appellation applies to the specific facts here involved, the challenge is disposed of by what we have already said; to the extent that it is designed to challenge the legislation on a broad constitutional basis, the argument is fully answered by the constitutional sanction given to this type of legislation in *West Coast*

*Hotel Company v. Parrish*, 300 *U. S.* 379, 57 *S. Ct.* 578, 81 *L. Ed.* 703, 108 *A. L. R.* 1330 (1937).

The basis of petitioners' second point, above noted, is that since *N. J. S. A.* 34:11–47 provides that "within ten days after the hearing the Commissioner shall * * * approve or disapprove the report of the wage board," he was obliged to approve or disapprove the same *in full*. Hence, it is said that his omission to expressly approve and conduct the survey recommended by the board, was *ultra vires* and invalidated his subsequent order. We disagree. *R. S.* 34:11–45 provides that the wage board shall submit to the Commissioner a report *including* its recommendations as to *minimum wage standards* for women or minors in the occupations or operations, the wage standards of which the wage board was appointed to investigate. The wage board did precisely this, in seven numbered paragraphs. Thereafter, in an unnumbered paragraph the recommendation for the survey "of the economic impact of this Wage Order" was made. Obviously, the board itself viewed its survey recommendation as a mere appendage to its basic purpose, namely, recommendations directed toward the promulgation of a suitable wage order, which the Commissioner was free to approve or disapprove. Having in mind that this was the basic legislative objective in providing for the appointment and convening of a wage board, we think that the failure by the Commissioner to comply with a "recommendation" which was merely ancillary to the wage order did not affect the validity of the order. Moreover, it does not appear that the board recommended that the survey be a prerequisite to the operation of its recommendations respecting minimum wage standards. It may well be that the Commissioner will conduct such a survey at a time when the wisdom of his order may be evaluated in the light of practical experience. If so, the subsequent survey would not be in conflict with the recommendations of the board. In any event, it is well established that "where an executive officer or agency fails to comply with the directions of a

statute governing administrative procedure, but nevertheless renders substantial justice, the courts will not interfere, except in the unusual situation where it is really essential to insure future observance of a prescribed safeguard or the vindication of a fundamental principle." *J. Abbott & Son, Inc. v. Holderman,* 46 *N. J. Super.* 46, 56 (*App. Div.* 1957). The point that the recommendations of the board were not approved within 10 days after a public hearing, as provided by *N. J. S. A.* 34:11–47 is likewise without merit. As previously noted, a public hearing was conducted on September 14, 1960. Nine days later in a letter directed to William J. Clark, Director Wage and Hour Bureau, the Commissioner signified his approval of the wage board's recommendations, as hereinabove stated. Petitioners evidently take the position that such a communication is insufficient compliance with the statute. No authority is cited in support of this contention and we find no basis for it in reason.

The third and fourth of the enumerated points are in effect outbranches of that first argued. We add to what we have said, with respect thereto, only that there is no statutory prohibition against fixing a minimum wage which is higher than the median rate in the industry, see *Mary Lincoln Candies, supra,* 45 *N. E. 2d,* at *p.* 437; and that the record does not justify petitioners' assertion that tips and the economy in various sectors of the State did not receive consideration. In connection with the question of tips, as we have previously noted, a meeting of the wage board with the Commissioner was held on August 17, 1960 at the instance of the latter, for the specific purpose of considering the possible impact of tipping on the minimum wage rate. At this meeting the chairman of the board stated that the board did not consider the inclusion of tips as a "feasible" factor in fixing the minimum rate since the inexperienced employee, to whose benefit the minimum wage was more likely to redound, would, by the very reason of her inexperience, be unlikely to receive tips in substantial amount.

The Commissioner indicated at the time that he was in accord with this view. The board also noted the difficulty of fixing an ascertainable amount received for tips. See comment on this subject in *New Jersey Restaurant Ass'n v. Holderman,* 24 *N. J.* 295, 307 (1957). With respect to the claim of varying economic statuses of workers in different sectors of the State, it was within the discreton of the board and the Commissioner to conclude that in view of the size of the State and the density of its population this factor, if it existed, was so nebulous as to furnish no reasonable basis for differentiation, at least until a survey should disclose facts to the contrary.

On review of the recommendations of the wage board upon which the Commissioner's order is based, we are not required to accord the board, an *ad hoc* administrative agency, the presumption of expertise which attaches to the acts of an experienced agency. *J. Abbott & Son, supra,* 46 *N. J. Super.,* at *p.* 59. Nevertheless we defer to its finding. What constitutes a proper minimum wage varies with the viewpoint of the finder, and with that very matter in contemplation, the Legislature constituted the wage board with an especially constructed composite viewpoint. *Id.*

Viewing the entire record in the light of the controlling principles, we are firmly convinced that the recommendations of the wage board and the action of the Commissioner thereon constituted a proper exercise of the authority conferred upon them by the Minimum Wage Standards law. Accordingly, Mandatory Order No. 12 is affirmed and judgment will be entered in favor of respondent.